THOMAS V. DUMONT v. COMMISSIONER OF TAXATION.

154 N. W. (2d) 196.

November 10, 1967—No. 40,641.

Lawrence J. Hayes, James W. Brehl, Albert A. Woodward, and Maun, Hazel, Green, Hayes, Simon & Aretz, for relator.

Douglas M. Head, Attorney General, and Don G. Paterick, Special Assistant Attorney General, for respondent.

KNUTSON, CHIEF JUSTICE.

Certiorari to review a decision of the State Tax Court assessing additional taxes against the relator.

The facts are not in dispute. Relator timely filed both Federal and state tax returns for 1958 and 1959. (It has been conceded that the 1958 tax is

barred by the running of the statute of limitations so we are concerned here only with the 1959 tax.) On May 18, 1962, the district director of internal revenue notified relator of a revenue agent's report of intended adjustment of his Federal tax for 1959, and on June 26, 1962, notified him of an intended assessment of alleged deficiencies in his 1959 return. On September 17, 1962, relator petitioned the Federal Tax Court, contesting the deficiency assessment. On May 7, 1964, the court rendered its decision holding that certain deficiencies were due for 1959.

The state commissioner of taxation first received notice on February 26, 1965, of the transactions concerning relator's Federal tax liability. On March 30, 1965, the commissioner notified relator of proposed deficiency assessments in his 1959 state return and on July 2, 1965, issued an order assessing additional tax liability for 1959. On July 29, 1965, relator filed an appeal from the commissioner's order to the State Tax Court. By order dated November 15, 1966, the Tax Court sustained the commissioner.

Statutes involved are Minn. St. 290.49, subd. 1, which reads in part:

"Except as otherwise provided in this chapter the amount of taxes assessable with respect to all taxable years ending after January 1, 1937, shall be assessed within three and one-half years after the return is filed."

And § 290.56, clauses (B) and (C), which provide as follows:

"(B)   If the amount of net income for any year of any taxpayer as returned to the United States Treasury Department is changed or corrected by the commissioner of internal revenue or other office of the United States or other competent authority * * * [resulting] in a change in net income, such taxpayer shall report such changed or corrected income * * * *within 90 days after the final determination of such change or correction* * * *, or as required by the commissioner of taxation* and shall concede the accuracy of such determination or state wherein it is erroneous. * * *

"(C)   Failure to report such changed or corrected federal net income or to file a copy of such amended federal return or notify the commissioner of the execution of such consent as set forth above and *within the time stated* shall suspend the running of the period of limitation until such report or copy has been furnished to the commissioner of taxation * * *." (Italics supplied.)

The commissioner of taxation under his rule-making power adopted Minnesota Income Tax Regulation 2056 on December 2, 1957, which reads as follows:

"In any case where the net income of a taxpayer as reported on his Federal Income Tax return is changed or corrected by the Internal Revenue Service or where the taxpayer files an amended Federal Income Tax return, the taxpayer shall report such change or correction, or report the filing of such amended return, by written notice directed to the Commissioner of Taxation within 90 days after whichever of the following events occurs first:

"(1)  Notification from the internal revenue service of a deficiency;

"(2)  Receipt of a revenue agent's report [of intended adjustment];

"(3)  Payment of additional taxes.

"Failure to so notify the Commissioner of Taxation will, extend the period within which the Commissioner may assess additional taxes for the taxable year involved, equal to the elapsed time between *such final determination* or the filing of an amended return and the date upon which proper notice is given to the Commissioner of taxation; however, such failure does not extend the period within which a claim for refund may be filed." (Italics supplied.)

Relator failed to notify the commissioner of taxation of the report of the internal revenue agent or the determination of the district director's intended adjustment of his Federal income tax within 90 days after the occurrence of these events. By the time the commissioner of taxation did receive notice, the statute of limitations had run unless it was tolled for failure to comply with the statute or a valid regulation.

The crucial questions, then, presented here are whether § 290.56(B) requires the taxpayer to give the commissioner of taxation notice of proposed changes in his Federal income tax liability prior to the final determination of such liability by the Federal Tax Court under the facts of this case, and whether the commissioner can require notice prior to the final determination by the Federal Tax Court in the event the taxpayer seeks relief there.

Essentially the case involves a construction of the words in § 290.56(B), "within 90 days after the final determination of such change or correction * * *, or as required by the commissioner of taxation * * *."

Ordinarily the words "final determination" would mean the end of a controversy. If a taxpayer takes no action after the assessment by the district director of internal revenue, it would seem that that is a final determination. If, however, within the time permitted by law, he petitions the Federal Tax Court for relief, a final determination is not made until that court has acted upon the matter and the time for appealing therefrom has expired. In other words, the taxpayer has the power to extend the time for final determination as long as he has the power to proceed further, and does so. Consequently, here the final determination occurred when the time for appeal from the Federal Tax Court's decision expired. That was subsequent to the running of the statute of limitations and assessment of further state tax would be barred unless the words in § 290.56(B), "or as required by the commissioner of taxation," give the commissioner authority to fix a different time by his rule-making power, as he did by promulgating Regulation 2056, requiring the taxpayer to give him notice of a proposed change in his Federal tax status.

If that regulation is valid, it is obvious that the taxpayer did not comply within 90 days after the three periods fixed by the commissioner, and the statute of limitations would have been suspended.[1] The question, then, is: Could the legislature confer such rule-making power on the commissioner and, if it could, did it intend to do so?

At the outset, assuming the legislature could do so, it would seem that if it had intended to confer such power on the commissioner it would have been unnecessary to specify a time in the statute at all. It could simply have said that notice should be given the commissioner of any change in the Federal tax status at such time and in such manner as the commissioner might require.

While it is clear that the legislature can confer on administrative agencies rule-making functions to be performed in connection with their administrative duties, it is equally clear that it may not confer legislative power upon the administrative agency, and that if the legislature has acted in a specific area, the administrative agency may not adopt a rule in con-

---

[1] It should be noted that under our statutes the statute of limitations is *suspended* and not *extended*. It is simply tolled and starts running again after expiration of the period for which it is tolled.

flict with the statute. Fairview Hospital Assn. v. Public Bldg. Serv. Union, 241 Minn. 523, 64 N. W. (2d) 16.

Apparently the commissioner construed the words "final determination" as meaning something other than a final adjudication by the Federal authority having jurisdiction over the matter, for in Regulation 2056, after requiring notice 90 days after one of the events specified, he said:

"Failure to so notify the Commissioner of Taxation will, extend the period within which the Commissioner may assess additional taxes for the taxable year involved, equal to the elapsed time between *such final determination* or the filing of an amended return and the date upon which proper notice is given to the Commissioner * * *." (Italics supplied.)

Obviously, if it considered "final determination" to mean final adjudication by ultimate Federal authority, notice could not be given after one of the events specified in the regulation. This language carries with it the connotation that any one of the three events is a final determination. We are of the opinion that it cannot be so construed. Final means final, and if the taxpayer proceeds further, an intermediate determination by the district director of internal revenue is not final determination.

Actually, what the commissioner contends is that the statute should be construed to read that the taxpayer "shall report such changed or corrected income * * * within 90 days after final determination of such change or correction unless required otherwise by the commissioner of taxation." The statute does not so read and it is not for this court to redraft it.

In supporting the commissioner's contention it might be argued that § 290.56 refers only to administrative authority to the exclusion of authority of the Federal Tax Court, but this does not destroy the meaning of "final determination," which surely includes a decision of the Federal Tax Court where the case is carried there from a determination of the district director of internal revenue.

It is undoubtedly true, as respondent asserts, that construction of the words "final determination" to mean the end of the controversy wherever it is finally adjudicated permits a taxpayer to defeat imposition of additional state taxes simply by continuing the struggle in the Federal Tax Court or higher courts until our statute of limitations has run. If this is not what the

legislature intended, the remedy lies with it and not with the courts. Statutes of limitation are within the legislative domain and may not be altered by the courts or administrative agencies. State v. Bies, 258 Minn. 139, 103 N. W. (2d) 228.

There is still another rule that comes into play—if the statute is ambiguous, the ambiguity must be resolved in favor of the taxpayer. Mondale v. Commr. of Taxation, 263 Minn. 121, 116 N. W. (2d) 82.

If anything can be said about this statute it is that it could hardly be more ambiguous. While the language seems clear enough, the administrative construction placed upon it by the commissioner of taxation and the State Tax Court requires us to hold that the language is not free from doubt, and since it involves a statute of limitations which may not be enlarged by the courts, it should be construed in favor of the taxpayer, leaving to the legislature such changes as it may desire in the future.

Section 290.56 deals only with the obligation of a taxpayer to report changes or corrections in his Federal income tax status. It does not prevent the commissioner of taxation from proceeding against the taxpayer on information received through any other source. We have been informed that the Federal and state tax authorities commonly exchange such information and it is conceivable that the commissioner of taxation, if he chooses to watch such information received from the Federal tax authorities, may proceed against the taxpayer before the statute of limitations expires.

We therefore hold that the decision of the Tax Court must be reversed and a determination made in favor of the taxpayer.