Richard J. **WEGENER** and Deborah Wegener, Relators,

v.

**COMMISSIONER OF REVENUE,** Respondent.

No. CX–92–2389.

Supreme Court of Minnesota.

Sept. 24, 1993.

As Amended on Grant of Rehearing Nov. 10, 1993.

James R. Dorsey, Minneapolis, for relators.

James W. Noher, Tax Litigation Div., St. Paul, for respondent.

COYNE, Justice.

We review on certiorari a decision of the tax court denying the claim of relators Richard J. and Deborah Wegener for a property tax refund of $12,010 pursuant to Minn.Stat. § 290A.04, subd. 2h(a) (1990). We affirm.

Our review turns on the construction and application of Minn.Stat. § 290A.04, subd. 2h(a) (1990), which provides for refund of certain excess increases in property taxes payable in 1990 through 1994. The facts on which the relators base their claim are undisputed:

In October of 1987 Richard and Deborah Wegener entered into a contract for the purchase of land known as 19550 Muirfield Circle, Shorewood, Hennepin County, Minnesota and a house which was to be constructed thereon. Construction of the house was completed by June 28, 1988, and the Wegeners closed their purchase of the property on that date. On or about June 29, 1988 the Wegeners filed a claim for homestead exemption and a certificate of real estate value stating that the full purchase price for the property was $464,635.00.

Although the house had long since been completed and was being occupied by the Wegeners on January 2, 1989, the Shorewood property tax assessor omitted the house from his valuation and appraised the property as of January 2, 1989 by estimating the market value of the land only as if it were unimproved land. The taxes assessed with reference to the assessor's estimated market value as of January 2, 1989, i.e., the net property taxes payable in 1990, were $1,181.72.

The value of the house was, however, included in the assessor's estimated market value as of January 2, 1990 and the taxes assessed on the value of the improved land—the land and the residence—i.e., the net property taxes payable on the Wegeners' homestead in 1991, amounted to $14,685.23. The Wegeners paid the taxes and on or about August 15, 1991 they applied for a "special property tax refund," asserting that because the gross property taxes payable in 1991 increased by more than 10% and by more than $40 over the net taxes payable in 1990 for the homestead, they were entitled to a refund of $12,010.00 pursuant to Minn.Stat. § 290A.04, subd. 2h(a) (1990).

The commissioner of revenue denied the claim for refund to the extent of $10,895.55 on the ground that the portion of the property tax increase attributable to new construction cannot be included in the computation of a special property tax refund. The Wegeners then appealed the commissioner's order to the tax court.

On cross motions for summary judgment the tax court denied the relators' motion and

granted the commissioner's motion. The relators sought review by certiorari.

The relators take the position that the literal language of Minn.Stat. § 290A.04, subd. 2h(a) (1990) [1] clearly and unequivocally requires the commissioner to refund to them the sum of $12,010; and because they find no ambiguity in the statute, relators contend that the statutory directive respecting the interpretation of statutes, as set out at Minn. Stat. § 645.16 (1992), precludes this court from looking beyond the literal meaning of the words of the statute no matter how absurd or futile or how plainly at variance with the policy and purpose of the legislation the result they urge may be.

We consider the construction of Minn.Stat. § 290A.04, subd. 2h(a) (1990) advocated by the relators to be violative of the uniformity clause, article X, section 1, of the Minnesota Constitution and the equal protection clause of the 14th amendment of the United States Constitution. Moreover, the presumption of constitutionality aside, there is no basis for charging the legislature with the intention of empowering these relators to forever cast upon their neighbors the burden of taxation which is rightfully imposed on relators' property.

Certainly, what is sometimes called "the plain meaning rule" is ancient and well respected, but our inquiry does not end with the literal words of the statute. Almost a century has gone by since this court assured Minnesota's continued recognition that legislative intention is of paramount importance in the construction and application of statutes:

'[C]anons of construction are not the masters of the courts, but merely their servants, to aid them in ascertaining the legislative intent'; and when it is ascertained the statute must be so construed as to give effect to such intention, even if it seem contrary to such rules and the strict letter of the statute.

*Winters v. City of Duluth*, 82 Minn. 127, 129, 84 N.W. 788, 789 (1901).

Sixty years ago Justice Stone reiterated the court's obligation to look beyond the mere words of a statute and to examine their operation. *State ex rel. Hansen v. Walsh*, 188 Minn. 412, 413, 247 N.W. 523, 524 (1933). In *Hansen*, the court went on to say, "Again we must stress the fundamental that a statute, like other writings, cannot be considered independently of its subject matter. [Citation omitted]. It is of interest and effect only when applied operatively to the things which it is intended to regulate and possibly to reorder." *Id.* at 413–14, 247 N.W. at 524.

A few years later the United States Supreme Court eschewed blind adherence to the plain meaning rule. *United States v. American Trucking Ass'n*, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940). The eloquence of Justice Reed's articulation of the function of the courts in the interpretation of statutes dictates its inclusion here:

In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress. There is no invariable rule for the discovery of that

1. Minn.Stat. § 290A.04, subd. 2h(a) (1990) provides in pertinent part:

If the gross property taxes payable on a homestead increase more than ten percent over the net property taxes payable in the prior year on the same property that is owned by the same owner in both years, and the amount of that increase is $40 or more for taxes payable in 1990 and 1991 * * * a claimant who is a homeowner shall be allowed an additional refund equal to the sum of (1) 75 percent of the first $250 of the amount of the increase over ten percent for taxes payable in 1990 and 1991 * * * and (2) 90 percent of the amount of the increase over ten percent plus $250 for taxes payable in 1990 and 1991 * * *. This subdivision shall not apply to any increase in the gross property taxes payable attributable to improvements made to the homestead after the assessment date for the prior year's taxes.

intention. To take a few words from their context and with them thus isolated to attempt to determine their meaning, certainly would not contribute greatly to the discovery of the purpose of the draftsmen of a statute * * *.

There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.'

310 U.S. at 542–44, 60 S.Ct. at 1063–64 (footnotes omitted).

Although we do not agree that the "literal language" of section 290A.04, subd. 2h(a) (1990), entitles relators to the tax refund they seek, even the most cursory review of the legislative history of the special property tax refund statute reveals that the purpose of the 1990 amendment was to "clarify" that the initial increase in property taxes assessed on a homestead and attributable to improvements to the homestead does *not* qualify for the special property tax refund. Hearing on H.F. 2480, H. Subcommittee on Tax Laws, 76th Minn.Leg., March 12, 1990 (audio tape) (testimony of John Haugen, Department of Revenue).

In short, there can be no doubt of the legislature's intention: the special property tax refund statute is simply not operatively applicable when the property tax increase is the result not of inflation or a substantial increase in what was once called the mill rate and is now known as the tax capacity rate, 1988 Laws, Minn. ch. 719, art. 5, § 84, but is rather the result of the inclusion of hitherto omitted buildings or other improvement in the estimated market value of property previously undervalued by reason of the failure to take into consideration the existence of those buildings.

Relators insist, however, that section 290A.04, subd. 2h(a) (1990) requires a refund of taxes assessed on an estimated market value which accurately represents the market value of the residential buildings as well as the land on which they are situated because, relators declare—on the basis of evidence speculative at best [2]—the assessor failed to correct the undervaluation within the time limitation mandated by Minn.Stat. § 273.02

---

2. Inasmuch as this matter was submitted on cross-motions for summary judgment, the tax court made no finding with respect to the assessor's discovery of the omission and his correction thereof. That issue was not addressed by either party until the relators, in their reply brief here, made the conclusory statement that the assessor did not correct the error timely. The citation to Minn.Stat. § 273.02 also appears for the first time in relators' reply brief. The only evidence contained in this record regarding the discovery and correction of the undervaluation of the Wegeners' property is a copy of a portion of the 1991 property tax statement bearing what appears to be the stamped words "Assessor's Correction" and "April 8, 1991". In a box containing the printed words "1991 New Improvements", the handwritten words "$402,000 per Assessor" appear. The market value of the property appears in regular printed form: $89,000 for 1990 and

$487,700 for 1991. Inasmuch as property taxes payable in 1991 were assessed with reference to property values as of January 2, 1990 pursuant to a detailed statutory framework which requires full documentation of corrections made after the board of review or equalization has adjourned, Minn.Stat. § 273.01, *et seq.*, it seems to us speculative to assume that the date on which the county auditor corrected the net tax capacity of the relators' property coincided with the date of a handwritten notation on a property tax statement. It is much more likely that the correction was made prior to December 1, 1990 than on April 8, 1991, but in any event that is a question for a finder of fact, not for this court. If the relators considered the date on which the assessor discovered his omission or noted its correction important to the validity of their claim, it was their obligation to bring it to the attention of the tax court.

(1992).[3] The unstated but necessary implication of relators' contention is that the assessor is forever barred from assessing relators' property on the basis of its full and true market value or its true character as a homestead, not merely undeveloped property. To be sure, there seems to have been no attempt to add to relators' taxes payable in 1991 the remainder of the tax which should have been paid the preceding year, and it is now too late to correct that omission. Minn.Stat. § 273.02, subd. 2. But although the time for seeking payment by the relators of the balance of the taxes which should have been assessed in 1989 has lapsed, the county auditor has until the assessment date in 1995 to correct the undervaluation of relators' property by entering the omitted buildings on the assessment and tax books. *Id.* Accordingly, the amount of the tax which should have been assessed in 1989 can be entered on the assessment and tax books even though it cannot be collected. Were we to adopt relators' position, we would render a large part of section 273.02 inoperative and, incidentally, invalidate it by giving it an unconstitutional effect.

This court long ago held that "discrimination in the imposition of the tax burden, resulting from systematic, arbitrary, or intentional undervaluation of some property as compared to the valuation of other property in the same class, violates the uniformity clause of Minn. Const. art. IX, § 1, and the equal protection clause of U.S. Const.Amend. XIV, even though the property so discriminated against be not assessed higher than its fair market value adopted as a uniform basis in the making of assessments." *Hamm v. State,* 255 Minn. 64, 70, 95 N.W.2d 649, 654–55 (1959) (overruled in part on other grounds by *United Nat'l Corp. v. Hennepin County,* 299 N.W.2d 73, 76 (Minn.1980)). The continued undervaluation of relators' property because the assessor could not take into consideration the value of the existing residential buildings would clearly amount to "systematic, arbitrary, or intentional undervaluation" of that property as compared to that of their neighbors and, hence, would be unconstitutional.

It seems to us more probable than not that the assessor's correction was timely. Regardless, however, when the assessor corrected the estimated market value by taking into consideration the value of the hitherto omitted residence, this court has held, in recognition of what has been characterized as "our well-established rule", that although provisions designed to enforce the collection of the tax or to divest the owner of his

---

**3.** Minn.Stat. § 273.02, subdivisions 1 and 2 (1992) read as follows:

**273.02 OMITTED PROPERTY.**

Subdivision 1. **Discovery.** If any real or personal property be omitted in the assessment of any year or years, and the property thereby escape taxation, or if any real property be undervalued by reason of failure to take into consideration the existence of buildings or improvements thereon, or be erroneously classified as a homestead, when such omission, undervaluation or erroneous classification is discovered the county auditor shall in the case of omitted property enter such property on the assessment and tax books for the year or years omitted, and in the case of property undervalued by reason of failure to take into consideration the existence of buildings or improvements thereon, or property erroneously classified as a homestead, shall correct the net tax capacity or classification thereof on the assessment and tax books and shall assess the property, and extend against the same on the tax list for the current year all arrearage of taxes properly accruing against it, including therein, in the case of personal property taxes, interest

thereon at the rate of seven percent per annum from the time such taxes would have become delinquent, when the omission was caused by the failure of the owner to list the same. If any tax on any property liable to taxation is prevented from being collected for any year or years by reason of any erroneous proceedings, undervaluation by reason of failure to take into consideration the existence of buildings or improvements, erroneous classification as a homestead, or other cause, the amount of such tax which such property should have paid shall be added to the tax on such property for the current year.

Subd. 2. **Limitation.** Nothing in subdivisions 1 to 3 shall authorize the county auditor to enter omitted property on the assessment and tax books more than six years after the assessment date of the year in which the property was originally assessed or should have been assessed and nothing in subdivisions 1 to 3 shall authorize the county auditor to correct the net tax capacity or classification of real property as herein provided more than one year after December 1 of the year in which the property was assessed or should have been assessed.

property for failure to pay the tax are mandatory, the proceedings in reference to the assessment, computation and levy of taxes are merely directory in nature and in the absence of substantial prejudice, any irregularity in such directory matters will not result in invalidation of the assessment. *Chun King Sales, Inc. v. County of St. Louis,* 256 Minn. 375, 98 N.W.2d 194 (1959); *Lindahl v. State,* 244 Minn. 506, 70 N.W.2d 866 (1955).

In summary, this is not a case of legislative oversight or of a conflict between state and federal income tax laws such as the court encountered in *Wallace v. Commissioner of Taxation,* 289 Minn. 220, 184 N.W.2d 588 (1971). It is a case in which the relators would have us bow down in abject servitude to what they assert is *the* primary rule of construction. Never mind that in doing so we must ignore the obvious legislative intention and circumvent the purpose of two statutes, Minn.Stat. §§ 290A.04, subd. 2h(a) (1990) and 273.02, subds. 1 and 2 (1992), misapplying the one and invalidating the other by giving it unconstitutional effect under the guise of pursuing the letter of the law by literal application of the statutory language.

Finally, if we are to look only to the literal meaning of the words of the statutes in question without regard to legislative intention or the general context in which the words appear, it might be instructive to note that the term "homestead" is defined at Minn.Stat. § 290A.03, subd. 6 (1992): " 'Homestead' means the dwelling occupied as the claimant's principal residence and so much of the land surrounding it, not exceeding ten acres, as is reasonably necessary for use of the dwelling as a home * * *." The special property tax refund statute, section 290A.04, subd. 2h(a) (1990) is by its literal terms applicable only to an increase in "the gross property taxes payable on a *homestead.*" (Emphasis added). If the assessor is prohibited from taking into consideration the existence of the building which constitutes the dwelling that makes it a homestead, then relators' gross property taxes are not "payable on a homestead" and the language of the

statute read literally takes relators' claim beyond the purview of the statutory refund. If we are bound by the literal language of the statute for one purpose, we should be similarly bound for other purposes.

 While we recognize our obligation to follow the plain meaning of the words of a statute when they "are sufficient in and of themselves to determine the purpose of the legislation," *United States v. American Trucking Ass'n, supra,* we are equally obliged to reject a construction that leads to absurd results or unreasonable results which utterly depart from the purpose of the statute. Since, in this case, the literal language meaning ascribed to this statute by the relators leads to the utterly absurd result that the assessor must ignore the existence of the admittedly valued $464,635 structure on the relators' land and estimate its market value as if it were unimproved land until such time as the relators sell the property, it is necessary to look to the purpose for which the statute was enacted and recognize that it is inapplicable under the circumstances presented here.

Judgment of the tax court affirmed.

PAGE, Justice (dissenting).

I dissent.

I cannot join the court in substituting its sense of what Minn.Stat. § 290A.04, subd. 2h(a) (1990) should say for what it does say. The court succeeds in denying these unsympathetic taxpayers a refund, but does so at the expense of longstanding principles of statutory construction. The relators are not the only losers in today's decision.

Minn.Stat. § 290A.04, subd. 2h(a), clearly provides for a refund of property taxes under certain circumstances. It also plainly states when the refund provisions do not apply:

> This subdivision shall not apply to any increase in the gross property taxes payable attributable to improvements made to the homestead *after* the assessment date for the prior year's taxes.[1]

---

1. This language was added to the statute in 1990. Act of April 24, 1990, ch. 480, art. 5, § 12, 1990 Minn.Laws 1033, 1128–29. Previously the stat-

ute provided that the refund did not apply to increases in net property taxes payable attributable to improvements made to the homestead,

(Emphasis added.) Relators' home was an improvement made before the assessment date for the prior year's taxes, and thus does not come within the exception to the refund provision. Consequently the statute entitles relators to a refund on their property taxes for the tax year in question.

The court argues that the legislature could not have intended this result. The legislature has, however, spoken as to its intention with regard to interpreting its statutes: "words and phrases are [to be] construed * * * according to their common and approved usage" and "[w]hen the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. §§ 645.08(1) and 645.16 (1992) respectively. The language of Minn.Stat. §§ 290A.04, subd. 2h(a) is clear and free from all ambiguity, and we are not free to disregard it.

The court's decision departs from our traditional approach to interpreting tax statutes. When the language of a tax statute is clear, we have refused to add language the legislature omitted or overlooked, or to extend the scope of the statute beyond that clear language. *Wallace v. Commissioner of Taxation*, 289 Minn. 220, 229–30, 184 N.W.2d 588, 593–94 (1971); *Northland Country Club v. Commissioner of Taxation*, 308 Minn. 265, 241 N.W.2d 806, 807 (1976); *Charles W. Sexton Co. v. Hatfield*, 263 Minn. 187, 195, 116 N.W.2d 574, 580 (1962). *See also Dumont v. Commissioner of Taxation*, 278 Minn. 312, 317, 154 N.W.2d 196, 200 (1967) (stating that ambiguity in tax statutes must be resolved in favor of the taxpayer).

Further, it is not clear the legislature was unmindful of situations where, as here, the assessor fails to include new improvements in the assessment for the prior year. In such situations the legislature has provided that

the assessment for any given year may be corrected under Minn.Stat. § 273.02, subd. 1 (1992). A properly corrected assessment for the tax year in question would require that the value of the new improvements be excluded from the refund calculation. Thus the legislature has provided a remedy for these situations.[2] For some unknown reason the assessment was not properly corrected in this case. The Commissioner now seeks to ignore the express language of the statute and exclude from the refund calculation improvements made to the homestead before the assessment date for the prior year's taxes.

Finally, given the nature of the 1990 changes to Minn.Stat. § 290.04, subd. 2h(a), the legislature either was or should have been aware of the clear and unmistakable meaning of the words used. If the literal language of this statute permits an unintended result, it is up to the legislature to correct it. We "are not free to substitute amendment for construction and thereby supply the omissions of the legislature." *State v. Moseng*, 254 Minn. 263, 269, 95 N.W.2d 6, 11–12 (1959).

In addition to basing its decision on its understanding of the legislature's intent, the court advances, albeit briefly, a constitutional argument. The court claims to find a violation of the uniformity clause, Article X, Section 1, of the Minnesota Constitution, and of the equal protection clause of the 14th Amendment of the United States Constitution, in the continuing undervaluation of relators' property. This is a curious claim. First, relators' property has now been correctly valued. Relators sought to receive a refund on taxes due on their accurately valued and assessed property. There is no undervaluation for this court to correct.

Second, the court finds a literal reading of the tax refund exception unconstitutional.

---

without stating when those improvements occurred.

2. The court fears that unless they read the statute to say something it does not say, the relators will "forever cast upon their neighbors the burden of taxation which is rightfully imposed on relators' property." This outcome is simply not possible.

Minn.Stat. § 290A.04, subd. 2h(a) (1992) limits "refunds for property taxes payable in 1993 and thereafter" to $1,500. Further, subdivision 2h is repealed by Act of Oct. 3, 1989, ch. 1, art. 7, § 9, 1989 Minn.Laws 1st Spec.Sess. 5, 109, effective for property taxes payable in 1995 and thereafter.

While I do not agree, I would be more easily persuaded that the refund statute itself, and not merely its exception, is unconstitutional. How does this statute, which gives refunds to property owners whose taxes have risen and exacts the full tax from similarly situated property owners who have consistently paid high taxes, serve to uniformly distribute the tax burden? The court seems to have swallowed a camel only to strain at a gnat.

TOMLJANOVICH, Justice (dissenting).

I join in the dissent of Justice Page.