STATE OF MINNESOTA

IN SUPREME COURT

A15-1461

| | |
|---|---|
| Court of Appeals | Chutich, J. |
| | Dissenting, Gildea, C.J. |
| State of Minnesota | Took no part, McKeig, J. |
| Respondent, | |
| vs. | Filed:  November 16, 2016 |
| | Office of Appellate Courts |
| Kristyn Nicole Schouweiler, | |
| Appellant. | |

_____

Lori Swanson, Minnesota Attorney General, Saint Paul, Minnesota; and

Karen S. Kelly, Wabasha County Attorney, Jacob J. Barnes, Assistant County Attorney, Wabasha, Minnesota, for respondent.

Drake D. Metzger, Metzger Law Firm, LLC, Minneapolis, Minnesota, for appellant.

_____

S Y L L A B U S

1.    The exception in the dishonored-check statute for "a check given for a past consideration," Minn. Stat. § 609.535, subd. 5 (2014), applies to any check given for goods or services received in the past.

2.    A check is issued for "a past consideration," Minn. Stat. § 609.535, subd. 5, when the issuer received any goods or services in the past, even if some goods and services will be received in the future.

Reversed.

1

CHUTICH, Justice.

Appellant Kristyn Nicole Schouweiler was charged with felony issuance of a dishonored check, Minn. Stat. § 609.535, subd. 2 (2014), when her check for past-due property taxes was returned for insufficient funds. The district court dismissed the criminal complaint, concluding that Schouweiler's check met the statutory exception for "a check given for a past consideration," *id.*, subd. 5 (2014). The court of appeals reversed, and Schouweiler petitioned for review. We conclude that "a check given for a past consideration" means a check given for a good or service that was received in the past. Because Schouweiler's check for past-due property taxes was given, in part, for government services provided in the previous year, her check was "given for a past consideration." Accordingly, we reverse the decision of the court of appeals.

I.

In February 2015, Schouweiler issued a check in the amount of $1,969.07 to the Wabasha County Auditor/Treasurer for past-due property taxes payable in 2014. The check was not honored by Schouweiler's bank, which returned it for insufficient funds. The County Auditor/Treasurer mailed a notice to Schouweiler, informing her that she had 5 days to make a valid payment, but she failed to do so.

Schouweiler was charged with issuance of a dishonored check, Minn. Stat. § 609.535, subd. 2. Schouweiler challenged the probable cause underlying the complaint and moved to dismiss it, arguing that her check fit within the statutory exception for "a check given for a past consideration," *id.*, subd. 5. After a hearing, the district court

2

dismissed the criminal complaint, holding that Schouweiler's check for past-due property taxes was "a check given for a past consideration," *id.*, because there was no contemporaneous exchange of goods or services for the check. It reasoned that the purpose of the dishonored-check statute was "to protect the person who would not have given the goods to the defendant but for the contemporaneous delivery of the check."

The court of appeals reversed. Observing that the phrase "past consideration" has a special meaning in contract law, the court of appeals held that the past-consideration exception "refers to a promise to pay that is unenforceable for lack of adequate consideration." *State v. Schouweiler*, No. A15-1461, 2016 WL 102578, at *2-3 (Minn. App. Jan. 11, 2016). Because Schouweiler wrote the check to fulfill a statutory obligation to pay taxes, and not to honor an unenforceable contractual obligation, the court of appeals concluded that the check was not "given for a past consideration." *Id.* at *3. Schouweiler sought review by this court, once again contending that her issuance of a check for past-due property taxes was "a check given for a past consideration." We granted review.

## II.

We begin with an overview of the statute. The dishonored-check statute provides: "Whoever issues a check which, at the time of issuance, the issuer intends[1] shall not be

---

[1]    The dishonored-check statute is an atypical criminal statute because it allows the fact-finder to infer intent when there is "proof that, at the time of issuance, the issuer did not have sufficient funds or credit with the drawee and that the issuer failed to pay the check within five business days" after notice was mailed to the issuer. Minn. Stat. § 609.535, subd. 3(2) (2014). We have said that the defendant must be given the opportunity to rebut such a presumption at trial, *State v. Williams*, 324 N.W.2d 154, 160 (Minn. 1982), but we have never directly addressed the constitutionality of allowing the fact-finder to infer intent from a presumption, *see id.* at 160 n.4.

3

paid, is guilty of issuing a dishonored check." Minn. Stat. § 609.535, subd. 2. But the Legislature created exceptions to the dishonored-check statute: "This section does not apply to a postdated check or to a check given for a past consideration, except a payroll check or a check issued to a fund for employee benefits." *Id.*, subd. 5.

Schouweiler's sole contention is that her check was "given for a past consideration" and is therefore subject to the exception in the dishonored-check statute. To resolve this issue, first we must decide whether the phrase "past consideration" has a plain or technical meaning. Then we must decide whether a check given to pay a property tax obligation is "given for a past consideration."

A.

We begin with the phrase "past consideration." Schouweiler argues that "past consideration" plainly refers to a valuable good or service that the check issuer received in the past. Quoting a Wisconsin Court of Appeals decision that interprets a dishonored-check statute nearly identical to Minnesota's statute, Schouweiler argues that the past-consideration exception includes "checks given either for services already performed or for goods already received." *See State v. Archambeau*, 523 N.W.2d 150, 151-52 (Wis. Ct. App. 1994) (quoting 66 Op. Wis. Att'y Gen. 168, 174 (1977)).

The State contends that the phrase "past consideration" is a contractual term of art. Because Schouweiler's tax payment arises from a statutory obligation, not a contractual one, the State argues, her check could not have been "given for a past consideration."

The meaning of the past-consideration exception is a question of law, which we review de novo. *Ekdahl v. Indep. Sch. Dist. No. 213*, 851 N.W.2d 874, 876 (Minn. 2014).

4

The purpose of statutory interpretation is to ascertain the intent of the Legislature. *Christianson v. Henke*, 831 N.W.2d 532, 536 (Minn. 2013). We generally interpret words and phrases according to their common and ordinary meaning, but we interpret technical words and phrases according to their special, technical meaning. *Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 72 (Minn. 2012); *accord* Minn. Stat. § 645.08(1) (2014). To decide whether words in a statute have a technical meaning or an ordinary meaning, we consider the context in which the phrase appears. *State v. Rick*, 835 N.W.2d 478, 484 (Minn. 2013). We interpret a statute "as a whole so as to harmonize and give effect to all its parts, and where possible, no word, phrase, or sentence will be held superfluous, void, or insignificant." *Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 496 (Minn. 2009) (quoting *In re United Health Grp. Inc.*, 754 N.W.2d 544, 563 (Minn. 2008)); *see also* Minn. Stat. § 645.16 (2014).

In ordinary, nonlegal speech, the word "consideration" means a payment given as compensation for a good or service. *See Webster's Third New International Dictionary of the English Language Unabridged* 484 (2002) (defining "consideration," in part, as "something given as recompense: as . . . payment, reward"); *see also The American Heritage Dictionary of the English Language* 392 (5th ed. 2011) (defining "consideration," in part, as "[p]ayment given in exchange for a service rendered; recompense"). "Past," of course, refers to something that has "existed or occurred in an earlier time." *The American Heritage Dictionary* 1290. "A check given for a past consideration" would then refer, according to its common and ordinary meaning, to a check given as payment for something of value received in the past.

As a contractual term of art, however, the phrase "past consideration" has a different meaning. "Consideration" is an act or forbearance that induces a contractually binding promise. *See Consideration*, *Black's Law Dictionary* (10th ed. 2014). But when the act or forbearance was given *before* the return promise was made, the act or forbearance is called "past consideration." *See id.* Because a "past consideration" does not actually induce a return promise, a promise given for "past consideration" is not legally binding. *See* 4 Richard A. Lord, *Williston on Contracts* § 8:11 (4th ed. 2008); *see also Lamprey v. Lamprey*, 29 Minn. 151, 155, 12 N.W. 514, 515 (1882).

The surrounding text of subdivision 5 shows that the Legislature intended for the phrase "past consideration" to be given its ordinary meaning, not its technical meaning. Stated in full, subdivision 5 provides: "This section does not apply to a postdated check or to a check given for a past consideration, *except a payroll check or a check issued to a fund for employee benefits*." Minn. Stat. § 609.535, subd. 5 (emphasis added).

Subdivision 5 has two layers. The first clause—"[t]his section does not apply to a postdated check or to a check given for a past consideration"—creates an exception to the dishonored-check statute. *Id.* The second clause—"except a payroll check or a check issued to a fund for employee benefits"—creates an exception to the exception. *Id.* Consequently, a check issued for payroll or benefits first must qualify as a "check given for past consideration" to avoid rendering the payroll-check and employee-benefit-check exceptions mere surplusage.

If we interpreted the phrase "past consideration" according to its technical meaning, the exceptions for "a payroll check" and "a check issued to a fund for employee benefits"

6

would make little sense.  An employee's pay and benefits are typically bargained for when an employment agreement is made and, therefore, are not "past consideration" under contract law.[2]  We cannot give effect to each word of the statute unless the phrase "past consideration" is interpreted according to its common and ordinary meaning.  Accordingly, we hold that the exception for "a check given for a past consideration" in subdivision 5 refers to any check given in payment for a good or service that was received in the past.  Such a check does not give rise to criminal liability under the dishonored-check statute.

This interpretation of the phrase "a past consideration" is supported by a decision of the Wisconsin Court of Appeals that discusses several Wisconsin Attorney General opinions that interpret an almost identical statutory exception.  *Archambeau*, 523 N.W.2d at 151; *see* Wis. Stat. Ann. § 943.24(4) (West 2015) ("This section does not apply to a postdated check or to a check given for a past consideration, except a payroll check.").[3]

---

[2]     The dissent suggests the possibility of payroll or employee benefit payments that are not bargained for, such as a holiday bonus or a spontaneous profit share.  These kinds of checks would fall outside the scope of the statute.  The plain meaning of "a payroll check or a check issued to a fund for employee benefits" requires a scheme of compensation. *The American Heritage Dictionary of the English Language* 1296 (5th ed. 2011) (defining "payroll," in part, as "[a] list of employees receiving wages or salaries, with the amounts *due* to each" (emphasis added)); *id.* at 168 (defining "benefit," in part, as "[a] form of *compensation* . . . provided to employees in addition to wages or salary *as part of an employment arrangement*" (emphasis added)).  In these definitions, the checks are issued for payroll or benefits *owed* to the employee.  Thus, a check meeting the contractual definition of "past consideration," such as a gratuitous holiday bonus, would not fall within the plain meaning of a "payroll check."

[3]     The Wisconsin statute was enacted in 1955.  Act of Dec. 24, 1955, ch. 696, 1955 Wis. Sess. Laws 974, 992 (codified as amended at Wis. Stat. Ann. § 943.24 (West 2015)).  When the Minnesota Legislature first enacted the statute at issue in this case in 1963, it used an identical exception.  *Compare* Act of May 17, 1963, ch. 753, 1963 Minn. Laws

7

Noting that a payroll check "usually follows an agreement as to the terms of employment, form of compensation, and the actual performance of the work," 66 Op. Wis. Att'y Gen. 168, 175 (1977), the Wisconsin Attorney General concluded that the phrase "past consideration" was not a legal term of art, but rather covered payments for "services already performed or goods already received, or for a past due obligation." *Id.* at 174.

Here the State argues, and the court of appeals concluded, that interpreting the phrase "past consideration" according to its common and ordinary meaning effectively eliminates criminal liability for checks that are issued for delayed or past-due payments, which is an absurd result. *Schouweiler*, 2016 WL 102578, at *3. We disagree.

When construing a statute, we presume that the Legislature did not intend an absurd or unreasonable result. Minn. Stat. § 645.17(1) (2014). But this canon is not applicable "except in an exceedingly rare case in which the plain meaning of the statute 'utterly confounds' the clear legislative purpose of the statute." *Schatz v. Interfaith Care Ctr.*, 811

---

1185, 1220 (codified as amended at Minn. Stat. § 609.535, subd. 5 (2014)) ("This section does not apply to a postdated check or to a check given for a past consideration, except a payroll check."), *with* Act of Dec. 24, 1955, 1955 Wis. Sess. Laws at 993 ("This section does not apply to a postdated check or to a check given for a past consideration, except a payroll check."). The employee benefit fund exclusion was added to Minnesota's law in 1967. Act of May 16, 1967, ch. 466, § 1, 1967 Minn. Laws 996, 996-97 (codified as amended at Minn. Stat. § 609.535, subd. 5 (2014)). From the timing and the identical statutory language, we can reasonably infer that the Minnesota statute was modeled after Wisconsin's statute.

8

N.W.2d 643, 651 (Minn. 2012) (quoting *Weston v. McWilliams & Assocs., Inc.*, 716 N.W.2d 634, 639 (Minn. 2006)).[4]

Our interpretation of the dishonored-check statute does not confound any clear legislative purpose. When the Legislature enacted the dishonored-check statute, including the past-consideration exception, it may have intended to criminally punish only the issuance of a worthless check that actually induced the other party to provide a good or service to the issuer of the check. The Legislature may have concluded that the physical presence of a check at the time of exchange would be more likely to induce the immediate delivery of goods or services than a mere promise by the issuer to write a check at a later date.[5]

Moreover, when someone writes a worthless check to pay a debt already owed, the relationship of the parties does not change; the party who wrote the check still owes the payment. In this case, the dishonored check that Schouweiler issued did not change the position of the government. The government remained legally entitled to Schouweiler's past-due taxes, just as it was before the check issued. And the government retained the

---

[4] This canon has been dispositive only once in our jurisprudence. *Schatz*, 811 N.W.2d at 651; *see Wegener v. Comm'r of Revenue*, 505 N.W.2d 612 (Minn. 1993).

[5] The State contends that our interpretation incorrectly reads the element of swindle into the dishonored-check statute and, therefore, conflates the crime of issuing a dishonored check with the crime of theft-by-check, Minn. Stat. § 609.52, subd. 2(a)(3)(i) (2014). The State is incorrect. The two crimes have different intent requirements, *State v. Cox*, 798 N.W.2d 517, 519 (Minn. 2011) (citing *State v. Roden*, 384 N.W.2d 456, 457 (Minn. 1986)), and our interpretation of the phrase "past consideration" does not affect the element of intent.

same legal recourse against Schouweiler for failure to pay her property taxes that existed before the check was dishonored.[6] The State's absurd-results argument is insufficient to overcome the common and ordinary meaning of the phrase "past consideration."

B.

Having decided that the exception for "a check given for a past consideration" refers to a check that was given for goods or services received in the past, the question remains whether Schouweiler's check fits the past-consideration exception. Property owners have a statutory obligation to pay taxes, *see* Minn. Stat. § 272.01, subd. 1 (2014), and it is undisputed that tax payments fund government services. Schouweiler argues that her check for property taxes reimbursed the county for government services received only during the previous year. The State contends that county services are received on an ongoing basis and not entirely received in the past.

The State is correct that a payment for property taxes funds both past and future government services. *See* Minn. Dep't of Revenue, *Understanding Property Taxes: Property Tax Fact Sheet 12a* (2011), http://www.revenue.state.mn.us/propertytax/factsheets/factsheet_12a.pdf (describing the

---

[6] Several statutes give the government specific recourse when a taxpayer fails to pay property taxes. *See* Minn. Stat. § 279.01, subd. 1 (2014) (imposing penalties for delinquent property taxes); Minn. Stat. §§ 280.001-.43 (2014) (providing for forfeiture of real estate due to unpaid taxes). Notably, these remedies do *not* include criminal prosecution. *Compare* Minn. Stat. § 289A.63, subd. 1 (2014) (imposing criminal penalties for tax evasion), *with* Minn. Stat. § 289A.01 (2014) (stating that chapter 289A applies to laws administered under various chapters without listing the chapters governing delinquent property taxes).

10

process of budgeting and calculating property taxes). But the Legislature created an exception for checks issued for "*a* past consideration." Minn. Stat. § 609.535, subd. 5. When used before a noun or a noun phrase, the word "a" denotes "a single but unspecified person or thing." *The American Heritage Dictionary* at 1. The use of the word "a" before the phrase "past consideration" shows that the Legislature required only a good or a service to have been received in the past for a check to be exempt from criminal liability under the dishonored-check statute. Because some of the government services funded by a property tax payment had already occurred by the time Schouweiler's check for past-due taxes issued, her check was "a check given for a past consideration."

The dissent maintains that property taxes are not paid *in exchange* for services, but rather are paid to fund local government, which then distributes the funds to pay for services that benefit the public as a whole. To be sure, a landowner's property tax burden is not calculated by the precise amount of services that she receives individually from the government.

But by March 31 every year, the County Treasurer's Office mails a tax statement to each property owner that provides an itemized list of the property tax due to taxing authorities. Minn. Dep't of Revenue, *supra*, at 2. This statement informs taxpayers that they are paying a specific amount of money for the county, an amount for the city (for those who live in one), and an amount for local schools, among other items. *Id.* A layperson may reasonably view the property tax payment as confirming a payment of money for, among other things, a variety of received and soon-to-be-received public services.

11

Because property taxes may be reasonably understood to support public services, and Schouweiler presumably received at least some of these services—fire and police protection or snow removal, for example—by the time she issued her check for the past year's property taxes, her check was given for a past consideration. Accordingly, Schouweiler's check was subject to the exception in Minn. Stat. § 609.535, subd. 5.[7]

Because Schouweiler's check for property taxes was "a check given for a past consideration," the district court correctly dismissed the criminal complaint. We therefore reverse the court of appeals' decision.

Reversed.

MCKEIG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

---

[7]     Schouweiler also argued that the court of appeals' interpretation of the dishonored-check statute is contrary to public policy, citing the provision of the Minnesota Constitution that prohibits imprisonment for a debt except in cases of fraud. *See* Minn. Const. art. I, § 12. Because Schouweiler's check meets the statutory exception, we need not address this public policy argument.

D I S S E N T

GILDEA, Chief Justice (dissenting).

The majority holds that the bad check appellant sent to the county to pay her property taxes was to pay for goods or services provided in the past and therefore was a check "given for a past consideration," as that term is used in Minn. Stat. § 609.535, subd. 2 (2014). I disagree with the majority's interpretation. But even if the majority correctly interprets the statute, appellant did not send her check to pay for goods or services provided in the past; she sent the check to pay taxes. Accordingly, I dissent.

On February 24, 2015, appellant Kristyn Schouweiler wrote a check for nearly $2,000 payable to Wabasha County for past due property taxes, penalties, and interest. The check was returned for insufficient funds. Wabasha County sent appellant a notification that she had 5 days to make the delinquent payment, a notification she claims not to have received. She did not make the delinquent payment within 5 days. The State eventually charged appellant with issuance of a dishonored check under Minn. Stat. § 609.535, subd. 2.

Appellant moved to dismiss the charge due to lack of probable cause, arguing that the check she wrote fell into the statutory exception for "a check given for a past consideration," Minn. Stat. § 609.535, subd. 5 (2014). After a hearing, the district court agreed and dismissed the complaint. The court reasoned that there was no "contemporaneous exchange of goods or services for the check" and therefore the check fell within the statutory exception.

The State appealed, and the court of appeals reversed and remanded the case for trial. The court of appeals interpreted the statutory exception for "a check given for a past consideration" as a reference to the contractual term of art, "past consideration," and concluded that because appellant's check was not given to support a promise to pay arising under contract law, the exception did not apply. *State v. Schouweiler*, No. A15-1461, 2016 WL 102578, at *2-3 (Minn. App. Jan. 11, 2016).

The relevant statutory provision states: "This section does not apply to a postdated check or to a check given for a past consideration, except a payroll check or a check issued to a fund for employee benefits." Minn. Stat. § 609.535, subd. 5. Under principles of contract law, "consideration" is "something of value given in return for a performance or a bargained for promise of performance." *Med. Staff of Avera Marshall Reg'l Med. Ctr. v. Avera Marshall*, 857 N.W.2d 695, 706 (Minn. 2014) (Anderson, J., dissenting) (quoting 20 Brent A. Olson, *Minnesota Practice—Business Law Deskbook* § 7:7 (2013-2014 ed.)). As the court of appeals reasoned, a purported consideration that is given *before* the promise to pay was made "was neither induced by the promise nor paid in exchange of it" and thus "cannot, properly speaking, be sufficient, valid, legal consideration." *Schouweiler*, 2016 WL 102578, at *3 (quoting 4 Richard A. Lord, *Williston on Contracts* § 8:11 (4th ed. 2008)). As the majority recognizes, such a purported consideration is referred to by the legal term of art "past consideration," which will not support a legally binding promise.

I interpret the statute the same way the court of appeals did. The exemption from criminal liability for writing a bad "check given for a past consideration," makes sense if the term "past consideration" is given its contract-law meaning. It is easy to imagine that

D-2

the Legislature might not want to criminalize the writing of a bad check when the party writing the check has no obligation to pay. Under the contract-law meaning of "past consideration" adopted by the court of appeals, no criminal liability attaches for writing such a check.

The majority goes a different route, reasoning that the phrase "a check given for a past consideration" does not refer to the contractual term of art, but to the phrase's purported ordinary, non-technical meaning, which the majority takes to be "a check given for goods or services received in the past," or perhaps more broadly, "a check given as payment for something of value received in the past." I disagree with the majority's interpretation.

First, assuming the statutory text *has* an ordinary, non-technical meaning, the interpretation the majority adopts is not workable. Specifically, after referring to non-legal dictionaries, the court interprets the term "consideration" to mean either "something given as recompense" or "payment given in exchange for a service rendered." But when those meanings are substituted into the statute's phrase "a check given for a past consideration," the statute would read: "a check given for a past []thing given as recompense," or "a check given for a past payment given in exchange for a service rendered." Those constructions do not naturally mean the same thing as "a check given for something of value [such as a good or service] that was received in the past," the majority's chosen phrase. In my view, if the Legislature had meant the exception to cover checks issued to pay for goods or services received in the past, the Legislature would have said that. The Legislature instead used a term that has a well-developed technical meaning, and I would apply that meaning.

D-3

But, the majority reasons, the surrounding text of subdivision 5 shows that the Legislature could not have intended to use the term "past consideration" according to its technical meaning. The majority looks to the full text of subdivision 5, which provides: "This section does not apply to a postdated check or to a check given for a past consideration, *except a payroll check or a check issued to a fund for employee benefits*." Minn. Stat. § 609.535, subd. 5 (emphasis added). Correctly identifying the italicized text as an "exception to the exception" to criminal liability, the majority reasons that "an employee's payroll or benefits must first be a type of 'past consideration' before they can logically be considered as exceptions to the past-consideration provision." And reasoning that "[a]n employee's pay and benefits are typically bargained for when an employment agreement is made," the court concludes that a check for payroll or benefits therefore cannot be for a past consideration in the contract-law sense.

The majority is mistaken. Regardless what *typically* occurs, it is clear that an employer can and may make a non-bargained-for payment to employee payroll, such as a holiday bonus. Likewise, some types of employee benefit plans, such as profit sharing plans, allow employers to choose when to make a contribution. "A profit sharing plan . . . allows the employer to choose how much to contribute to the plan (out of profits or otherwise) each year, including making no contribution for a year." U.S. Dep't of Labor & Internal Revenue Serv., *Profit Sharing Plans for Small Businesses* 1 (2014), https://www.dol.gov/ebsa/publications/profitsharing.html. An employer might, for example, publicly promise to provide such a bonus or plan contribution, citing its recognition of employees having exceeded sales goals throughout the year. Such a promise

D-4

would clearly be for "past consideration" as that term is used in contract law, because the purported consideration for it—the employees' performance in exceeding sales goals—occurred in the past. The majority's argument with reference to the surrounding text of subdivision 5 therefore is unpersuasive.

In sum, I disagree with the majority's interpretation. I would interpret the statute as the court of appeals did, and affirm on that basis.

But even assuming that the majority correctly interprets the statute, I would still affirm. The majority's interpretation exempts a check given for a good or service that was received in the past. But a payment for property taxes is not "given for a good or service." It is given in order to fund local governments, which spend the funds they collect for various purposes. Those services may or may not provide a specific benefit to the taxpayer, but either way the tax payment is not "given for a good or service."

Article X, section 1, of the Minnesota Constitution provides: "Taxes shall be uniform upon the same class of subjects and shall be levied and collected for *public purposes*." Minn. Const. art. X, § 1 (emphasis added). Taxes are collected to support the public, not necessarily to provide services for the person taxed. Thus, a landowner's claim that he did not get his "money's worth" from his property taxes would not be cognizable in the courts. Instead, under our system of property taxation, all real property in Minnesota is taxable except property exempt from taxation by law. Minn. Stat. § 272.01, subd. 1 (2014). Each local jurisdiction determines the revenue needed from property taxes to meet its budget. This amount—the levy—is equal to the total proposed budget less other sources of revenue. The levy is then spread among all taxable properties according to their tax

capacity (which in turn is calculated by multiplying the taxable market value by the state-mandated classification rate), and then reduced by applicable credits. *See* Minn. Dep't of Revenue, *Understanding Property Taxes: Property Tax Fact Sheet 12a* (2011), http://www.revenue.state.mn.us/propertytax/factsheets/factsheet_12a.pdf. A landowner's property tax burden does not depend on the level of services the landowner receives, or the level of services the land receives; rather, it depends (roughly) on the level of services the local jurisdiction provides to all its citizens.[8] In other words, "[g]overnment spending and revenues will affect [a landowner's] tax bill the most," *id.* at 1, not the "goods or services" the landowner receives.

In short, local governments use property taxes to *pay for* services that they provide; taxpayers do not "give" tax payments for services, except in the most abstract way as a part of the social compact. Local governments provide many benefits to our citizens, and to do so they must be funded. Nevertheless, I am certain the Legislature did not intend to include

---

[8] The situation might be different for special assessments, which are authorized under our constitution "for local improvements upon property benefited thereby," Minn. Const. art. X, § 1, and which, to be valid, must convey a "special benefit" on the property assessed that actually increases the property's market value. *See, e.g.*, *Carlson-Lang Realty Co. v. City of Windom*, 307 Minn. 368, 369, 240 N.W.2d 517, 519 (1976). But the past-due property taxes appellant purported to pay with the check at issue in this case did not include any amounts for special assessments.

a landowner's required contribution to that funding as payment for "goods or services received in the past."[9]

For these reasons, I respectfully dissent.

---

[9]    In addition to her statutory argument, appellant also contends that her prosecution violates the Minnesota Constitution. *See* Minn. Const. art. I, § 12 ("No person shall be imprisoned for debt . . . ."). Because the district court has not yet addressed this issue, I do not reach it.