MUTUAL SERVICE CASUALTY INSURANCE COMPANY, Respondent,

v.

LEAGUE OF MINNESOTA CITIES INSURANCE TRUST, Petitioner, Appellant.

No. CX–01–1929.

Supreme Court of Minnesota.

April 24, 2003.

Charles E. Gillin, Stephen F. Buterin, Jardine, Logan & O'Brien, P.L.L.P., Lake Elmo, MN, for League of Minnesota Cities Insurance Trust.

Jack D. Moore, Moore, Warner & Kruger, St. Paul, MN, for Mutual Service Casualty Insurance Company.

Michael C. Snyder, Pamela J. Spaulding, Meshbesher & Spence, Ltd., Minneapolis, MN, for Minnesota Trial Lawyers Association (Amicus Curiae).

## OPINION

HANSON, Justice.

A City of Rochester police officer driving a marked patrol car struck a pedestrian, who sustained injuries that resulted in $33,340.92 in medical expenses. The pedestrian's insurer brought a declaratory judgment action against the city's insurer to require it to pay the first $20,000 of the pedestrian's basic economic loss benefits on the grounds that the city's insurer has first priority coverage under Minnesota's No–Fault Automobile Insurance Act ("the Act"). Minn.Stat. §§ 65B.41–65B.71 (2002). The district court granted summary judgment for the city's insurer, based on its conclusion that a marked patrol car is not a "motor vehicle" and thus the city's insurer had no liability for economic loss benefits under the Act. The court of appeals reversed, holding that the plain meaning of the definition of a "motor vehicle" would lead to an absurd and unreasonable result that departed from the stated purpose of the Act. We reverse the court of appeals and hold that a marked patrol car is not a "motor vehicle" and therefore that an injured pedestrian does not have the right to recover basic economic loss benefits from the city under the Act.

The parties do not dispute the facts. On March 17, 2000, a marked patrol car owned by the City of Rochester struck a pedestrian, Christopher Paul Kruger, at or near the intersection of Third Avenue and 10½ Street in Rochester. Officer Timothy Lutzke of the Rochester Police Department was driving the patrol car and was acting within the scope of his duties at the time of the accident.

Under the Act, a person has the right to claim basic economic loss benefits if he or she has been injured by the "maintenance or use of a *motor vehicle.*" Minn.Stat. § 65B.46, subd. 1 (2002) (emphasis added). The Act defines a "motor vehicle" as

every vehicle, other than a motorcycle or other vehicle with fewer than four wheels, which (a) *is required to be registered pursuant to chapter 168,* and (b) is designed to be self-propelled by an engine or motor for use primarily upon public roads, highways or streets in the transportation of persons or property, and includes a trailer with one or more wheels, when the trailer is connected to or being towed by a motor vehicle.

Minn.Stat. § 65B.43, subd. 2 (2002) (emphasis added). Under Minn.Stat. § 168.012, subd. 1(b), "[v]ehicles owned by the federal government, municipal fire apparatuses including fire suppression support vehicles, *police patrols,* and ambulances, *the general appearance of which is unmistakable,* are not required to register or display number plates." Minn.Stat. § 168.012, subd. 1(b) (2002) (emphasis added).

Appellant League of Minnesota Cities Insurance Trust ("LMCIT") is the automobile insurance carrier for the City of Rochester. Its policy provides basic economic loss benefits coverage for the city's qualified vehicles, including $20,000 for medical

expenses. Kruger is insured under his grandfather's automobile insurance policy with respondent Mutual Services Casualty Insurance Company ("MSI"). The MSI policy likewise provides basic economic loss benefits coverage, including $20,000 for medical expenses. It also provides an additional $60,000 in optional coverage. To date, MSI has paid $13,340.92 toward Kruger's medical expenses from this optional coverage. MSI refuses to pay the first (or additional) $20,000 in medical expenses incurred because it believes that, under the Act, LMCIT has a higher priority of payment.

In order to determine priority of payment, MSI commenced a declaratory judgment action against LMCIT and petitioned the court to declare that LMCIT has priority to pay the first $20,000 of Kruger's medical expenses. Both parties filed cross-motions for summary judgment. The district court granted LMCIT's motion and found that the marked patrol car involved in the accident was not a "motor vehicle" as defined in Minn.Stat. § 65B.43, subd. 2. The court therefore concluded that the priority provision of Minn.Stat. § 65B.47, subd. 3 did not apply to LMCIT.[1]

MSI appealed, and the court of appeals reversed. The court acknowledged that, on its face, the statutory definition of a "motor vehicle" does not include marked patrol cars. *Mutual Service Casualty Ins. Co. v. League of Minnesota Cities Ins. Trust*, 646 N.W.2d 546, 549 (Minn.App. 2002). It concluded, however, that "applying the plain meaning of the statutory definition of 'motor vehicle' to deny an injured person the right to basic economic loss benefits produces an absurd and unreasonable result that plainly departs from the first stated purpose of the Minnesota No–Fault Automobile Insurance Act." *Id.* at 550. The court held that the patrol car was a "motor vehicle" and remanded to the district court to determine priority of payment between the two insurers. *Id.* We granted review.

## I.

▮ LMCIT argues that the plain language of the statute is clear: first, the Act permits recovery of basic economic loss benefits only when the injury results from the maintenance or use of a "motor vehicle" and, second, a marked patrol car is not within the definition of a "motor vehicle" because it is not required to be registered under Minn.Stat. § 168.012, subd. 1(b). Statutory interpretation is a question of law which we review de novo. *Nelson v. Am. Family Ins. Group*, 651 N.W.2d 499, 503 (Minn.2002). When a district court grants summary judgment based on the application of a statute to undisputed facts, the result is a legal conclusion that we similarly review de novo. *Id.*

▮ We agree with the court of appeals that the plain meaning of the statutory definition of a "motor vehicle" does not include marked patrol cars. The cases cited by MSI and amicus Minnesota Trial Lawyers Association in support of their argument that a marked patrol car is a motor vehicle within the Act do not actually address that question and cannot over-

---

1. Minnesota Statutes § 65B.47, subd. 3 (2002) provides as follows:

   In the case of any other person whose injury arises from the maintenance or use of a motor vehicle described in subdivision 1 or 2 [injury resulting from business use or from use of vehicle provided by employer] who is not a driver or occupant of another involved motor vehicle, the security for the payment of basic economic loss benefits is the security covering the vehicle, or if none, the security under which the injured person is an insured.

come the plain words of the Act. *See, e.g.,* *Loven v. City of Minneapolis,* 639 N.W.2d 869–70 (Minn.2002) (holding that the city was liable for basic economic loss benefits in an accident involving a city police van where there was no argument that the van was marked); *Fryer v. Nat'l Union Fire Ins. Co.,* 365 N.W.2d 249, 253 (Minn.1985) (stating that a police officer "would have promptly received no-fault benefits" as a result of the accident if he had been ineligible for worker's compensation benefits, but providing no indication that any party argued or that this court considered the definition of a "motor vehicle").

MSI suggests that the only purpose for the exemption of marked patrol cars from registration under Minn.Stat. § 168.012, subd. 1(b) was to relieve governmental bodies from the cost of registration and that the exclusion of marked patrol cars from the No–Fault Act goes beyond that purpose. Although the purpose for the exemption from registration provided in Chapter 168 may have been to avoid the cost, the legislature expanded that purpose when it incorporated the exemptions from registration into the No–Fault Act's definition of "motor vehicle."

MSI argues that the plain meaning of the statutory definition of motor vehicle contained in Minn.Stat. § 65B.43, subd. 2 should not be viewed in isolation and asserts that the plain meaning is actually contradicted by the compulsory insurance section of the Act. The premise of MSI's argument is that the definition of motor vehicle is subject to an important qualification contained in subdivision 1 of Minn. Stat. § 65B.43: "The following words and phrases shall, for the purpose of sections 65B.41 to 65B.71, have the meanings ascribed to them, *except where the context clearly indicates a different meaning.*" MSI then urges that this qualification is triggered by the compulsory insurance

section, which, in MSI's view, requires the owner of a marked patrol car to obtain basic economic loss benefits coverage for the vehicle.

The compulsory insurance section provides:

> Every owner of a *motor vehicle* of a type which is required to be registered or licensed *or is principally garaged in this state* shall maintain * * * a plan of reparation security * * *, insuring against loss resulting from liability imposed by law for injury and property damage * * *. The plan of reparation security shall provide for basic economic loss benefits and residual liability coverage * * *.

Minn.Stat. § 65B.48, subd. 1 (2002) (emphasis added). MSI interprets this language to mean that a marked patrol car that is not required to be registered or licensed must still be insured for basic economic loss benefits under the Act if it is principally garaged in Minnesota. MSI suggests that it is unreasonable to conclude that the legislature intended the term "motor vehicle," as used in the compulsory insurance section, to incorporate the registration requirement contained in the definition section because (1) it followed the term "motor vehicle" with a specific reference to that very registration requirement, which would be superfluous if the definition already incorporated it, and (2) it made registration only one of two alternative requirements for compulsory insurance, which would be rendered a nullity by the incorporation of the registration requirement in the definition of "motor vehicle."

We agree with MSI that these two provisions are neither well coordinated nor artfully drawn. We are not persuaded, however, that this supports the conclusion that the legislature did not intend to use

the plain meaning of the definition of "motor vehicle."

■ First, the compulsory insurance section provides only indirect evidence of the legislature's intent regarding the definition of "motor vehicle," whereas the definition section is a direct expression of that intent. To the extent there might be a conflict between that definition and the compulsory insurance requirement, the definition should prevail. Moreover, we must leave it to the legislature to correct any inconsistency that might be created by a subsidiary provision.

■ We also agree with the court of appeals that the compulsory insurance provision only applies to vehicles that first meet the definition of "motor vehicle." Thus, the compulsory insurance provision merely begs the question of what is the proper interpretation of the definition of "motor vehicle." As the court of appeals observed, "no matter where a vehicle is garaged, it is not within the statutory definition of 'motor vehicle' unless it is required to be registered under chapter 168." *MSI*, 646 N.W.2d at 549.

Finally, we are not convinced that this application of the plain meaning of the definition of "motor vehicle" renders superfluous the inclusion of the registration requirement in the compulsory insurance section. Although the legislature does not explain the reason for that inclusion, LMCIT suggests a plausible explanation that would not make the requirement superfluous. LMCIT suggests that the purpose of the registration requirement in the compulsory insurance section was to fill the gap that would exist for a new resident who is not required to register a vehicle with a foreign registration during the first 60 days of residence. *See* Minn.Stat. § 168.012, subd. 8 (2002). LMCIT distinguishes this purpose from any purpose to require compulsory insurance for a

marked patrol car because the limiting phrase—"Every owner of a motor vehicle *of a type which is required to be registered* or licensed"—applies to the new resident, whose vehicle is of a type that ultimately must be registered, but not to a marked patrol car, which is not "of a type" because it will never be required to be registered. *See* Minn.Stat. § 65B.48, subd. 1 (2002).

We conclude that the term "motor vehicle" under the Act does not include a marked patrol car.

## II.

■ If the plain meaning of a "motor vehicle" does not include a marked patrol car, we must then proceed to the second step of our analysis and determine whether there are any overriding reasons to disregard that plain meaning. In doing so, we are mindful of the statutory directive that "[w]hen the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (2002). Thus, where the intention of the legislature is clearly manifested by plain and unambiguous language, we have neither the need nor the permission to engage in statutory interpretation. *Ed Herman & Sons v. Russell*, 535 N.W.2d 803, 806 (Minn.1995).

The court of appeals stated that it would disregard the plain meaning of "motor vehicle" because the "[a]pplication of the plain meaning of the statutory definition of 'motor vehicle' produces an absurd and unreasonable result" that an injured person's right to basic economic loss benefits depends solely on the appearance of a police vehicle. *MSI*, 646 N.W.2d at 549–50. The court noted that, unlike marked patrol cars, unmarked vehicles used in general police work are required to register under chapter 168. *Id.* at 549 (citing

Minn.Stat. § 168.012, subd. 1(b), 1(c)). The court relied upon two cases where this court was asked to disregard the plain meaning of a statute. Those cases do not support the court of appeals' conclusions here.

In *Olson v. Ford Motor Company,* a motorist injured in an automobile accident sued the automobile manufacturer and claimed that the car's seat belts were defective. 558 N.W.2d 491, 493 (Minn.1997). The manufacturer moved for summary judgment, arguing that Minn.Stat. § 169.685, subd. 4 (1996), known as the "seat belt gag rule," precluded the introduction of any evidence pertaining to whether the plaintiff was wearing his seat belt at the time of the accident.[2] *Olson,* 558 N.W.2d at 493. The plaintiff challenged the plain meaning of the statute, arguing that its sole purpose was to protect plaintiffs who failed to wear a seat belt from contributory negligence claims, not to preclude proof of a defect in a seat belt. *Id.* at 495. We refused to depart from the plain meaning of the statute. *Id.* Although we recognized the concept that the plain meaning of a statute might properly be disregarded in a rare case where that meaning "utterly confounds a clear legislative purpose," we concluded that the legislative purpose was not that clear. *Id.* We said: "Because it simply is not clear that the legislature intended to benefit motorists alone in enacting the seat belt gag rule, we cannot say that applying the plain language of the statute to crashworthiness cases produces an absurd result that utterly confounds a clear legislative purpose." *Id. See also Anker v. Little,* 541 N.W.2d 333, 338 (Minn.App.1996), *rev. denied* (Minn. Feb. 9, 1995) (stating seat belt gag rule did not produce an absurd result and

the court was not required to look beyond the plain language of the statute).

Similarly, in *Wegener v. Commissioner of Revenue,* we considered whether the plain meaning of a property tax refund statute would lead to an absurd and unreasonable result. 505 N.W.2d 612, 617 (Minn.1993). The taxpayers claimed that they were entitled to a special property tax refund pursuant to a literal reading of Minn.Stat. § 290A.04, subd. 2h(a) (1990), which limited annual property tax increases to ten percent unless the property was sold. *Wegener,* 505 N.W.2d at 614. We concluded that the statute was not applicable to a property tax increase that resulted from the taxpayers' construction of a new residence on what had previously been unimproved land. *Id.* at 615.

We did discuss in *Wegener* the concept that the plain meaning of a statute might be disregarded in rare cases, stating: "Since in this case, the literal language meaning ascribed to this statute by the [taxpayers] leads to the utterly absurd result that the assessor must ignore the existence of the admittedly valued $464,635 structure on the [taxpayers'] land and estimate its market value as if it were unimproved land until such time as the [taxpayers] sell the property, it is necessary to look to the purpose for which the statute was enacted and recognize that it is inapplicable under the circumstances presented here." *Id.* at 617. But we ultimately determined that the literal meaning of the statute did not preclude the assessment of a tax on the value of the new residence. *Id.* at 615, 617. Further, to the extent the statute presented any ambiguity, we construed it by reference to a legislative history that presented a clear legislative purpose to only limit tax increases resulting

2. In 1996, Minn.Stat. § 169.685, subd. 4 read, in pertinent part: "Proof of the use or failure to use seat belts * * * shall not be admissible in evidence in any litigation involving person-
al injuries or property damage resulting from the use or operation of any motor vehicle." Minn.Stat. § 169.685, subd. 4 (1996).

from inflation or mill-rate increases, not those resulting from "hitherto omitted buildings or other improvement." *Id.* at 615.

Thus both *Olson* and *Wegener* recognized that the court could disregard the plain language of a statute only where the legislative purpose was clear and the plain meaning would utterly confound that purpose. We declined to disregard the plain meaning in *Olson* because the legislative purpose was not clear, and we were willing to consider disregarding the plain meaning in *Wegener,* only because we concluded that the legislative purpose was clear. We conclude that the present case is more akin to *Olson* because we cannot say that the legislative purpose so clearly contradicts the plain meaning of "motor vehicle."

[T]he legislative purpose relied upon by MSI and the court of appeals is a very general one:

> To relieve the severe economic distress of uncompensated victims of automobile accidents within this state by requiring automobile insurers to offer and automobile owners to maintain automobile insurance policies * * * which will provide prompt payment of specified basic economic loss benefits to victims of automobile accidents without regard to whose fault caused the accident[.]

Minn.Stat. § 65B.42(1) (2002). That purpose does not express an intent that no-fault benefits be universally provided, with no exceptions. In fact, the Act does not provide universal no-fault benefits but recognizes that there will be several classes of uncompensated victims of accidents with vehicles that might otherwise have been considered to be "automobiles," such as motorcycles, school buses, farm tractors and all-terrain vehicles. *See* Minn.Stat. § 65B.43, subd. 2 (2002) (limiting the definition of "motor vehicle" to exclude motorcycles and vehicles not "required to be registered pursuant to chapter 168").

Moreover, unlike *Wegener,* where the legislative purpose dealt with the specific issue presented—to limit tax increases resulting only from inflation or mill-rate increases—the legislative purpose of the Act cannot be said to be specifically directed at the circumstances presented by a marked patrol car.

Finally, the legislative purpose must be viewed in the context of other remedies available to victims, before and after passage of the Act. Prior to the adoption of the Act in 1974, pedestrians injured by an automobile had no statutory right to basic economic loss benefits but had only the rights at common law to bring an action for negligence. The use of the plain meaning of the definition of "motor vehicle," therefore, does not reduce any right that a pedestrian previously enjoyed under the law. Instead, it acts as a limit on the new statutory rights created by the Act. This court did not have authority to create those rights and, likewise, it does not have authority to extend them beyond those provided by the legislature.

We recognize that the use of the plain meaning of "motor vehicle" will result in a class of accident victims being uncompensated under the Act, including pedestrians or passengers who happen to be injured by any of the vehicles that are not required to be registered under Chapter 168. But, based on the words that the legislature used to define the classes of persons who would be compensated under the Act, we must conclude that the legislature intended that this class of victims would not be compensated under the Act.

Reversed and remanded.

GILBERT, J., took no part in the consideration or decision of this case.