**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2176
A14-0167
A14-0245**

State Farm Mutual Automobile Insurance Company,
Respondent (A13-2176),

GEICO Insurance Company,
Respondent (A14-0167),

vs.

Metropolitan Council,
Appellant,

Lashandra Scott,
Respondent (A13-2176),

Adelfa Javana,
Respondent (A13-2176),

Donald Brooks,
Respondent (A13-2176),

Lataura McKinney, et al.,
Defendants (A13-2176),

Robert Burgin, III, et al.,
Defendants (A14-0167)

and

Metropolitan Council,
Appellant,

vs.

Gregg Powell,
Respondent (A14-0245).

**Filed September 22, 2014**
**Affirmed**
**Willis, Judge\***

Ramsey County District Court
File No. 62-CV-13-1617
Hennepin County District Court
File Nos. 27-CV-13-2130, 27-CV-13-4623

C. Todd Koebele, Scott G. Williams, Murnane Brandt, St. Paul, Minnesota (for respondent State Farm Mutual Automobile Insurance Company)

John R. Crawford, Benjamin A. Johnson, Johnson & Lindberg, P.A., Minneapolis, Minnesota (for respondent GEICO Insurance Company)

Daniel L. Abelson, Associate General Counsel, Metropolitan Council, St. Paul, Minnesota; and Jeannie Provo-Petersen, Daniel J. Stahley, Provo-Petersen & Associates, P.A., Lake Elmo, Minnesota (for appellant Metropolitan Council)

Charles D. Slane, Jennifer E. Olson, TSR Injury Law, Bloomington, Minnesota (for respondent Lashandra Scott)

Sharifa Elaraj, William Moody, Veronica Walther, Elaraj & Associates, Minneapolis, Minnesota (for respondent Adelfa Javana)

Christina M. Kath, Osterbauer Law Firm, Minneapolis, Minnesota (for respondent Donald Brooks)

Lindsay M. Mancini, Paul A. Thompson, Woods & Thompson, P.A., Minneapolis, Minnesota (for respondent Gregg Powell)

Charles A. Bird, Jeremy R. Stevens, Bird, Jacobsen & Stevens, P.C., Rochester, Minnesota (for amicus curiae Minnesota Association for Justice)

Considered and decided by Reyes, Presiding Judge; Hooten, Judge; and Willis, Judge.

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment under Minn. Const. art. VI, § 10.

Buses operated by the Metropolitan Council are "motor vehicles" for purposes of the Minnesota No-Fault Automobile Insurance Act, and the Metropolitan Council is therefore required to provide basic-economic-loss benefits for bus passengers without their own auto insurance who are injured in bus accidents.

**O P I N I O N**

**WILLIS**, Judge

In these consolidated appeals from district court decisions that buses owned and operated by appellant are "motor vehicles" for purposes of the Minnesota No-Fault Automobile Insurance Act, making appellant liable for payment of basic-economic-loss benefits to passengers without their own auto insurance who are injured on its buses, appellant argues that (1) the no-fault act does not apply to vehicles exempt from the registration requirements of Minnesota Statutes, chapter 168, and chapter 168 does not require registration of appellant's buses; (2) Minnesota Statutes, sections 473.448–.449 exempt appellant from state regulation, and thus exclude its buses from registration requirements under chapter 168; (3) caselaw supports the conclusion that appellant's buses are exempt from registration; and (4) appellant's buses are also exempt from registration because the Minnesota Department of Public Safety does not require appellant to register them. We affirm.

**FACTS**

Appellant Metropolitan Council is a statutorily created regional planning agency that serves the Twin Cities Metropolitan Area. The Met Council owns and operates a

large fleet of buses as part of the Metro Transit transportation system.[1] This appeal is traceable to seven separate incidents in which a total of 17 passengers were injured or allegedly injured while riding Met Council buses. The passengers' claims led to six district court suits seeking declaratory judgments, four in Ramsey County and two in Hennepin County. In Ramsey County, the district court consolidated the four cases. Hennepin County did not consolidate the two cases there, but in both counties the district courts rejected the Met Council's summary-judgment motions. The Met Council appeals from all three decisions. Although we have consolidated the three appeals, a case-by-case summary of the historical facts is helpful.

### *State Farm v. Met Council, Scott, et. al.*, A13-2176

During 2012 and 2013, 14 bus passengers were injured in collisions that occurred in Ramsey County between buses operated by the Met Council and other vehicles. In each accident the second vehicle was insured by respondent State Farm Mutual Automobile Insurance Company. None of the injured bus passengers had auto insurance. The Met Council is self-insured. Most of the passengers sought basic-economic-loss benefits from the Met Council first, then from State Farm after the Met Council denied their claims. Others bypassed the Met Council and sought basic-economic-loss benefits directly from State Farm, apparently because they were aware of the Met Council's policy of denying such claims. Others sought basic-economic-loss benefits from State Farm first and were denied, then turned to the Met Council.

---

[1] The transit system was formerly operated by the Metropolitan Transit Commission, which was abolished in 1994 and succeeded by the Met Council. 1994 Minn. Laws, ch. 628, art. 2, § 4, at 1710.

State Farm filed four declaratory-judgment suits in Ramsey County, asking the district court to rule that the Met Council is liable for the passengers' claims. The Ramsey County District Court consolidated those four suits with State Farm as plaintiff and the Met Council and the passengers as defendants. State Farm and the Met Council brought cross-motions for summary judgment. The Met Council argued that it is not liable for basic-economic-loss benefits because liability attaches to insurers of "motor vehicles," and although the Met Council is self-insured, its buses are not "motor vehicles" under the no-fault act. State Farm argued that the Met Council's buses are "motor vehicles" under the no-fault act and that the Met Council is therefore first in line to provide basic-economic-loss benefits to injured passengers who do not carry their own auto insurance. The district court granted State Farm's motion and denied the Met Council's motion. The Met Council appeals.

### *GEICO v. Met Council et. al.*, A14-0167

In March 2012 a Met Council bus operating in Hennepin County collided with a car insured by respondent GEICO Insurance Company. Two bus passengers who did not carry their own auto insurance were injured and sought basic-economic-loss benefits from the Met Council and GEICO. The Met Council and GEICO denied the passengers' claims, and GEICO filed suit in Hennepin County District Court, seeking a declaratory judgment that the Met Council is liable for the claims. The Met Council and GEICO filed cross-motions for summary judgment, asserting arguments similar to those asserted in the State Farm case in Ramsey County. The district court denied the Met Council's motion and granted GEICO's motion. The Met Council appeals.

### *Met Council v. Powell*, A14-0245

The third appeal is dissimilar from the other two in some ways and the facts are disputed, but it ultimately raises the same issue. Respondent Gregg Powell alleges that he was riding a Met Council bus in September 2012 when the driver braked suddenly to avoid a swerving car. The car was never identified, and Powell did not carry his own auto insurance. Powell petitioned for no-fault arbitration, seeking to recover basic-economic-loss benefits from the Met Council. The Met Council filed suit in Hennepin County District Court seeking a declaratory judgment that it is not liable for Powell's basic-economic-loss benefits and a motion for summary judgment, and asking for a stay of the arbitration proceedings pending resolution of the coverage issue. Powell opposed the Met Council's summary-judgment motion but did not file a cross-motion. The district court denied the Met Council's motion, lifted the stay, and referred the case back to the no-fault arbitrator for resolution of the factual disputes. The Met Council appeals.

We consolidated the three appeals, ordered that the Met Council's brief should address all three cases, granted respondents permission to file joint or separate briefs, and granted the Minnesota Association for Justice's motion to file an amicus brief. The Met Council, State Farm, and GEICO filed individual briefs. Powell filed a joint brief with two passenger-defendants from the State Farm case. Several passengers filed letters endorsing the briefs submitted by others or waiving the right to make separate oral arguments, or both. We now consider the consolidated appeal.

## ISSUE

Is a bus operated by the Met Council a "motor vehicle" under the Minnesota No-Fault Automobile Insurance Act?

## ANALYSIS

We review summary-judgment decisions de novo. *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010). When reviewing such decisions, our task is to "determine whether there are genuine issues of material fact and whether the [district] court erred in applying the law." *Anderson v. Anoka Hennepin Ind. Sch. Dist. 11*, 678 N.W.2d 651, 655 (Minn. 2004).

The parties and the amicus curiae Minnesota Association for Justice assert arguments based on statutory construction, caselaw, and other authorities.[2] We address the arguments in that order, but we begin with an explanation of the no-fault act to better frame the issue.

The legislature adopted the no-fault act, codified as Minn. Stat. §§ 65B.41 to 65B.71 (2012),[3] in 1974 for the purposes of (1) relieving uncompensated victims from the economic stress caused by auto accidents; (2) preventing overcompensation of auto-accident victims; (3) encouraging victims to seek and receive appropriate medical

---

[2] We do not directly address the arguments presented by the amicus curiae because they are duplicative of arguments raised by respondents. State Farm and GEICO also assert policy arguments. Because we affirm, we do not reach those arguments.

[3] The GEICO case technically falls under the 2010 statutes because the accident at issue occurred before August 1, 2012, the effective date of the 2012 statutes. All other accidents and the Powell incident occurred after that date. For all of the statutory provisions at issue, the 2010 language and the 2012 language are identical.

treatment by assuring prompt payment of medical expenses; (4) speeding the administration of justice, easing the burden of litigation on the courts, and creating an efficient arbitration system; and (5) preventing auto-accident victims from receiving double recovery. 1974 Minn. Laws ch. 408 at 762 (fact of enactment); Minn. Stat. § 65B.42 (stating purposes of the no-fault act); *Scheibel v. Ill. Farmers Ins. Co.*, 615 N.W.2d 34, 37 (Minn. 2000) (summarizing purposes of the no-fault act ). The no-fault act requires that every auto-insurance policy issued in Minnesota include several types of coverage. Minn. Stat. § 65B.49. "Basic economic loss" coverage is one of them. *Id.*, subd. 2. Basic economic losses include medical expenses, loss of income, and other economic losses resulting from "injury arising out of the maintenance or use of a *motor vehicle*." Minn. Stat. § 65B.44, subd. 1 (emphasis added).

The no-fault act assigns liability for basic-economic-loss benefits based on a priority system. *See* Minn. Stat. § 65B.47, subds. 1–4. When the injured party is a passenger, the first position is occupied by the insurer whose policy covers the injured party, even if that party's automobile was not involved in the accident. *Id.*, subd. 4(a). If the first position is unoccupied, such as when the injured passenger does not have auto insurance, liability then passes to the insurer of the "involved motor vehicle" in which the passenger was riding. *Id.*, subd. 4(b). If the second position is unoccupied, liability passes to the insurer of any other "involved motor vehicle." *Id.*, subd. 4(c).

Here, the first position is vacant in all cases because none of the injured passengers had their own auto insurance. The Met Council is the insurer of the buses in which the passengers were riding, but argues that the second position is effectively vacant

8

because (1) the Met Council buses are not "motor vehicles" as that term is defined in the no-fault act; (2) the injured passengers were therefore not passengers in an "involved motor vehicle"; and (3) liability must pass to State Farm or GEICO as insurers of the other "involved motor vehicles." We must therefore decide whether a bus operated by the Met Council is a "motor vehicle" under the no-fault act.

## I.        Statutory arguments

We review statutory interpretations de novo, and the application of a statute to undisputed facts is a legal conclusion subject to de novo review. *Weston v. McWilliams & Assocs.*, 716 N.W.2d 634, 638 (Minn. 2006).

### A.      No-fault act

Under the no-fault act "[e]very owner of a motor vehicle of a type which is required to be registered or licensed or is principally garaged in this state shall maintain . . . a plan of reparation security" that provides coverage for basic-economic-loss benefits, among other things. Minn. Stat. § 65B.48, subd. 1. Security may be provided through insurance or self-insurance. *Id.*, subd. 2. Political subdivisions "shall provide security by lawfully obligating [themselves] to pay benefits . . . either as a self-insurer" or by buying insurance. *Id.*, subd. 4. As a political subdivision, the Met Council falls under subdivision 4. *See* Minn. Stat. § 473.123, subd. 1 (2012) (establishing the Met Council as a political subdivision). It is undisputed that the Met Council must therefore provide "a plan of reparation security." But the no-fault act limits recovery to losses "suffered through injury arising out of the maintenance or use of a motor vehicle." Minn. Stat.

9

§ 65B.44, subd. 1. This leaves open the possibility that the Met Council may be shielded from liability if its buses are not "motor vehicles."

The no-fault act defines "motor vehicle" as "[e]very vehicle, other than a motorcycle or other vehicle with fewer than four wheels, which (a) is required to be registered pursuant to chapter 168, and (b) is designed to be self-propelled by an engine or motor for use primarily upon roads . . . ." Minn. Stat. § 65B.43, subd. 2. The Met Council concedes that its buses fall within clause (b) but argues that they do not fall within clause (a). Whether that argument prevails depends on whether Met Council buses are "required to be registered pursuant to chapter 168."

## B. Chapter 473

Before addressing chapter 168 directly, the Met Council asserts that its buses are exempt from chapter 168, asserting arguments based on two sections of chapter 473, the statute that created the Met Council as a political subdivision. *See* Minn. Stat. § 473.123, subd. 1 (providing that "[a] Metropolitan Council . . . is established as a public corporation and political subdivision of the state"). We reject these arguments because (1) we conclude that the language of the no-fault act makes the provisions of chapter 473 irrelevant to the issue before us; and (2) even if chapter 473's provisions are relevant, the Met Council's arguments based on those provisions lack merit.

### 1. Relevance

The no-fault act defines a vehicle as a "motor vehicle" if it is "required to be registered *pursuant to chapter 168*." Minn. Stat. § 65B.43, subd. 2 (emphasis added). The parties agree that to determine whether a bus falls within that definition, it is

10

necessary to go outside of the no-fault act, but they disagree about how far to go. Respondents argue, in effect, that the legislature would have us go no further than chapter 168 and that the Met Council's buses are "motor vehicles" if chapter 168 requires them to be registered. The thrust of the Met Council's argument is that we should go beyond chapter 168 and examine the Minnesota Statutes as a whole and that even if chapter 168 requires registration, if any other statutory provision precludes it, then the buses are not "motor vehicles" under the no-fault act.

We disagree with the Met Council's argument because we find it inconsistent with the plain meaning of section 65B.43, subdivision 2. If the legislature had intended the Met Council's interpretation, it could have simply omitted the phrase "pursuant to chapter 168," or substituted "under any Minnesota statute" or similar language. In our interpretations of statutes, we are to give every word and phrase meaning and effect. *Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn. 1999). And when the language of a statute is unambiguous, we interpret it according to its plain meaning. *Brua v. Minn. Joint Underwriting Ass'n*, 778 N.W.2d 294, 300 (Minn. 2010). The Met Council's interpretation makes meaningless the legislature's use of the phrase "pursuant to chapter 168" and ignores the plain meaning of that phrase. Although we conclude that the provisions of chapter 473 are therefore not relevant to the issue of whether a Met Council bus is a "motor vehicle" under the no-fault act, we address the Met Council's chapter 473 arguments, and respondents' counter-arguments, in order to better explain our decision.

## 2. Section 473.449

Minn. Stat. § 473.449 (2012) provides that "[t]he exercise by the council of the powers provided in sections 473.05 to 473.449 shall not be subject to regulation by or the jurisdiction or control of any other public body or agency, either state, county, or municipal, except as specifically provided in this chapter." Operating a bus transit system on public roads is one of the Met Council's enumerated powers. Minn. Stat. § 473.411, subd. 5 (2012). Under chapter 168, vehicles subject to registration must be registered before they can be operated on public roads. Minn. Stat. § 168.09, subd. 1. The Met Council argues that (1) registration under chapter 168 amounts to regulation of the Met Council's powers; (2) chapter 473 does not create an exception that would permit such regulation; (3) chapter 473 therefore exempts the Met Council buses from registration; and (4) the Met Council buses are therefore not required to be registered and fall outside of the no-fault act's definition of "motor vehicle."

Respondents GEICO and Powell counter that the Met Council's broad interpretation of section 473.449 would lead to the absurd result that Met Council buses would not be subject to traffic laws. *Am. Fam. Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 278 (Minn. 2000) (stating that courts interpreting statutes seek to avoid absurd results). GEICO also argues that a blanket exemption would render other statutes superfluous, particularly traffic laws exempting the Met Council buses from specific traffic regulations. *See Amaral*, 598 N.W.2d at 384 (stating that statutes should be interpreted to give meaning and purpose to every word, phrase, and sentence). For example, Minn. Stat. § 169.306(a) (2012) permits the Met Council buses to drive on the shoulders of

12

freeways, and Minn. Stat. § 169.86, subd. 6, exempts articulated buses from restrictions on the length and width of vehicles. GEICO argues that if the Met Council is immune from traffic regulations, those statutes would have no purpose.

State Farm highlights another statutory provision that weighs against the Met Council's interpretation: Minn. Stat. § 473.129, subd. 8 (2012), gives the Met Council power to "provide for self-insurance or otherwise provide for insurance" and states that if the Met Council chooses to self-insure, it may do so for a variety of liabilities "including its obligation to pay basic economic loss benefits under [the no-fault act]." State Farm argues that the legislature's decision to empower the Met Council to self-insure its obligations under the no-fault act belies the Met Council's claim that it is exempt from vehicle registration, and therefore from the no-fault act.

In response, the Met Council concedes that some of its vehicles are subject to the no-fault act because they are not transit vehicles. Such vehicles are registered with the Department of Public Safety. The Met Council argues that the statute's reference to obligations under the no-fault act pertains to those registered vehicles only. So on the one hand, the Met Council argues that its buses are exempt from registration because section 473.449 exempts the Met Council from regulation. But on the other hand, it concedes that it is bound by the no-fault act but argues that its no-fault-act obligations pertain only to its non-transit vehicles. The Met Council cannot have it both ways. The Met Council offers no explanation why registration of its buses is "regulation" barred by section 473.449, but registration of its other vehicles is not. The Met Council does not argue that chapter 473 creates an exception permitting the state to regulate non-transit

13

vehicles, and we find none. We therefore reject as logically inconsistent the Met Council's argument that section 473.449 exempts its buses from registration.

### 3. Section 473.448

Minnesota Statutes, section 473.448 (2012), provides that "[n]otwithstanding any other provision of law to the contrary, the . . . assets of the [C]ouncil used for transit operations . . . are exempt from all *taxation, licenses, or fees* imposed by the state" or any other political body, with exceptions that do not apply here. (Emphasis added.) The Met Council argues that this provision exempts its buses from registration because they are assets used for transit operations, and the payment of a tax or fee is an indivisible part of registration. The Met Council asserts two supporting arguments: First, the Met Council argues that there is no class of vehicles that is required to register, but not required to pay some sort of fee. A close reading of chapter 168 undercuts this argument. Minnesota Statutes, section 168.012, subdivision 1(a)(1), provides that certain vehicles, including "vehicles owned and used solely in the transaction of official business by . . . any political subdivision" are "exempt from the provisions of this chapter requiring payment of tax and registration fees." Thus section 473.448 exempts the Met Council from "taxation, licenses, and fees" on its buses and section 168.012, subdivision 1(a)(1), exempts the Met Council from "payment of tax and registration fees" on buses, but does not address "licenses."

Second, the Met Council focuses on the word "licenses," arguing that "license" is synonymous with "registration," as allegedly demonstrated by the legislature's interchangeable use of those terms, and reasoning that exemption from "licensing"

14

necessarily includes exemption from "registration."[4] But this argument runs counter to the unambiguous meanings of those words. "Register" means "[t]o enter in a public registry" as in "register a new car" or "[t]o make a record of." *Black's Law Dictionary* 1396 (9th ed. 2009). "License" means "permission . . . to commit some act that would otherwise be unlawful" and "a certificate or document evidencing such permission." *Id.* at 1002. The plain meaning of section 473.448, as applied to the Met Council buses, is that the state does not have authority to require the Met Council to pay a tax, obtain a license, or pay a fee before permitting their operation. This interpretation is consistent with section 473.411, subdivision 5, which expressly empowers the Met Council to use public roadways for transit purposes "without payment of any compensation." Given the plain meanings of the critical terms, the prohibition in section 473.448 of state "licenses" for buses does not necessarily preclude the state from requiring the Met Council to cooperate with the compilation of public records regarding its buses (i.e., "registration"), provided that the process does not involve "taxation . . . or fees imposed by the state." As noted above, section 168.012, subdivision 1(a)(1), creates a corresponding class of vehicles, which includes those operated by the Met Council, that are exempt from "payment of tax and registration fees."

"Our goal when interpreting statutory provisions is to ascertain and effectuate the intention of the legislature." *Brua*, 778 N.W.2d at 300 (quotations omitted). But "[i]f the meaning of a statute is unambiguous, we interpret the statute's text according to its plain

---

[4] The Met Council also points to two definitions of "registration"—both occurring outside of chapter 168—that seems to conflate licensing and registration. *See* Minn. Stat. § 168A.01, subd. 17 (2012), and Minn. R. 7410.0100, subpart 11 (2013).

15

language." *Id.* We reject the Met Council's section 473.448 argument because it seeks to divine legislative intent by applying canons of construction to unambiguous statutory language.

## C.    Chapter 168

Chapter 168 provides a complex set of rules governing vehicle registration. The Met Council argues that "chapter 168 does not contemplate a vehicle that must register but not pay a tax or fee or display license plates." Under Minn. Stat. § 168.012, subd. 1, different classes of vehicles are subject to different requirements, depending on the type of vehicle and who owns, leases, and operates it, and for what purpose. Three of the classes are relevant to this case. Subdivision 1(a)(1) creates the first class by exempting "vehicles owned and used solely in the transaction of official business by the federal government, the state, or any political subdivision" from "payment of tax and registration fees." The second class is created by subdivision 1(b), under which four types of vehicles are "not required to register," provided that their "general appearance is unmistakable": (1) vehicles owned by the federal government, (2) fire apparatuses owned or leased by the state or a political subdivision, (3) police patrols owned or leased by the state or a political subdivision, and (4) ambulances owned or leased by the state or a political subdivision. Subdivision 1(j) creates the third class by providing that "[a]ll other motor vehicles must be registered and display tax-exempt number plates, furnished by the registrar at cost . . . ."[5]

---

[5] Subdivisions 1(c) through 1(i) are not relevant to this case.

16

The Met Council's argument suffers from two basic flaws. First, as described above, it conflicts with the plain meaning of the words the legislature chose when drafting Minn. Stat. § 168.012, subd. 1(a). Second, it conflicts with the principle that statutes should be interpreted to give meaning and effect to all of their provisions. *See Amaral*, 598 N.W.2d at 384 (stating that statutes should be interpreted to give meaning and purpose to every word, phrase, and sentence). The Met Council's interpretation of subdivision 1(a) is that the vehicles it describes are exempt not only from taxes and registration fees but also from registration. Subdivision 1(b) explicitly exempts all the vehicles it describes from registration. But all of the vehicles that fall within subdivision 1(b) also fall within subdivision 1(a) because they are all owned by the federal government, the state, or a political subdivision. If, as the Met Council asserts, subdivision 1(a) exempts the vehicles it describes from registration, then subdivision 1(b)'s explicit registration exemption is superfluous.

The Met Council also argues that its buses are not required to register because of an apparent conflict between subdivisions 1(a) and 1(j). The former exempts certain vehicles, including the Met Council buses, from payment of taxes and registration fees. The latter is a catch-all provision requiring registration of "[a]ll other motor vehicles" not addressed in the other subdivisions. Subdivision 1(j) goes on to require that such vehicles must "display tax-exempt number plates, furnished by the registrar *at cost* . . . ." (Emphasis added.) The Met Council argues that if its buses must be registered, then they fall under subdivision 1(j), which impermissibly imposes a fee equal to the cost of the number plates.

17

Assuming that the Met Council's construction of subdivision 1(j) is correct—that payment for number plates provided at cost constitutes a "fee"—its argument does not dispose of the issue. Returning again to the language of the no-fault act, whether a vehicle is a "motor vehicle" under the no-fault act does not depend on whether chapter 168 requires payment of a fee or whether any such fee is permissible. Instead, it depends on whether the vehicle is "required to be *registered* pursuant to chapter 168." Minn. Stat. § 65B.43, subd. 2 (emphasis added). Whether payment for the cost of number plates provided at cost is a "fee" is irrelevant to the no-fault act's definition of "motor vehicle." Whether the Met Council buses are required to be registered is resolved by subdivision 1(j), which requires registration of "all other motor vehicles" not addressed elsewhere. If subdivision 1(j) requires a fee that is barred by other provisions, the inconsistency is for the legislature to resolve. *See Mut. Servs. Cas. Ins. v. League of Minn. Cities Ins. Trust*, 659 N.W.2d 755, 760 (Minn. 2003) (stating that if there is a conflict between the no-fault act's definition of a "motor vehicle" and other statutory provisions, the definition should prevail, and it falls to the legislature to correct any inconsistency).

Additionally, the apparent conflict may be resolved by considering the plain meaning of "fee," which means "a charge for labor or services." *Black's Law Dictionary* 690 (9th ed. 2009). Number plates are not labor or services. A plain interpretation of subdivision 1(j) is that the vehicles it requires to be registered must display number plates and that the registrar must provide them, charging no more than the cost at which it obtains them, without charging for its labor or for the service of providing the plates— i.e., without charging a "fee."

18

In sum, we reject the Met Council's interpretation of chapter 168 because (1) it would render other provisions superfluous, (2) it is not consistent with the plain meaning of the statutory language, and (3) if its provisions conflict with each other, the inconsistencies are for the legislature to resolve.

## II. Caselaw

No Minnesota appellate court has decided whether a Met Council bus is a "motor vehicle" under the no-fault act. The parties point to appellate cases that have decided similar issues, the most prominent being *Mutual Services Casualty Insurance v. League of Minnesota Cities Insurance Trust*, 659 N.W.2d 755 (Minn. 2003) (*MSI*).

*MSI* arose from an incident in which a Rochester police officer driving a marked squad car hit and injured a pedestrian. *Id.* at 757. The pedestrian's insurer sued the city's insurer, seeking a declaratory judgment that the city's insurer must provide first-priority coverage under the no-fault act. *Id.* at 758. The city's insurer moved for summary judgment, and the district court granted the motion based on its conclusion that a marked patrol car is not a "motor vehicle" under the no-fault act. *Id.* We reversed, holding that although a squad car is not a "motor vehicle" under the plain meaning of the no-fault act's definition, application of that definition would lead to an absurd and unreasonable result because it would deprive the injured pedestrian of basic-economic-loss benefits. *Id.* at 760. The supreme court reversed our decision. *Id.* at 762. Focusing on the interplay between the no-fault act's definition of "motor vehicle" and chapter 168's registration requirements, the supreme court concluded that a marked squad car is not a "motor vehicle" under the no-fault act because chapter 168 specifically exempts marked

19

squad cars from registration, which in turn excludes them from the no-fault act's definition of "motor vehicle." *Id.* at 761-62.

As an initial matter, *MSI* is distinguishable from this case because it involved a marked squad car, not a transit bus. Marked police cars are among the vehicles specifically exempted from registration under Minn. Stat. § 168.012, subd. 1(b). Still, the Met Council relies heavily on the supreme court's conclusions that the no-fault act was not intended to provide universal coverage and that accident victims would not be entitled to basic-economic-loss benefits if they were injured by vehicles that are not "motor vehicles" under the no-fault act. *See MSI*, 659 N.W.2d at 762.

The Met Council's reliance is misguided because here the district courts did not override the plain meaning of the statutory language to resolve a perceived absurd result in conflict with the purposes of the no-fault act. Instead, they adhered to the plain meaning and reached decisions that do not conflict with the no-fault act's purposes or the supreme court's conclusions about them. Those purposes are to (1) relieve uncompensated victims from the economic stress caused by auto accidents; (2) prevent overcompensation of auto-accident victims; (3) encourage victims to seek and receive appropriate medical treatment by assuring prompt payment for medical expenses; (4) speed the administration of justice, ease the burden of litigation on the courts, and create an efficient arbitration system; and (5) prevent auto-accident victims from receiving double recovery. Minn. Stat. § 65B.42. In *MSI*, the supreme court concluded that the no-fault act's statement of purpose "does not express an intent that no-fault benefits be universally provided, with no exceptions. In fact, the [a]ct . . . recognizes that

20

there will be several classes of uncompensated victims of accidents with vehicles" not subject to the no-fault act. 659 N.W.2d at 762. Our affirmance of the district courts does not result in universal access to basic-economic-loss benefits in all circumstances; there are still several classes of victims who would not be eligible for no-fault benefits. *MSI* provides one example; our decision has no effect on the status of marked squad cars under the no-fault act. It also has no effect on the status of other vehicles exempted from registration under section 168.012, subdivision 1(b).

We conclude that *MSI* reinforces the rule that unambiguous statutory language must be interpreted according to its plain meaning. The supreme court took pains to note "the statutory directive that '[w]hen the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.'" *MSI*, 659 N.W.2d at 760 (quoting Minn. Stat. § 645.16 (2002)[6]). The supreme court warned against needless interpretation of statutes that use plain and unambiguous language. *Id.*

GEICO cites a decision of this court that purportedly supports the conclusion that the Met Council buses are subject to the no-fault act. In *American Family Insurance v. Metropolitan Transit Commission*, a passenger made a claim for no-fault benefits after she tripped and fell while getting off a Metro Transit bus. 424 N.W.2d 825, 826 (Minn. App. 1988). We held that Metro Transit was liable for her no-fault claim. *Id.* at 828. We find GEICO's argument unpersuasive because *American Family* is fundamentally

---

[6] The language of the current statute is identical with that of the 2002 statute quoted by the supreme court. Minn. Stat. § 645.16 (2012).

different from this case. There, the decision was based on our conclusion that a 1986 amendment to the no-fault act, which shifted no-fault liability away from Metro Transit under the circumstances, did not bar the victim's claim because although the claim was filed after the amendment, the incident occurred before the effective date of the amendment. *Id.* Whether a Metro Transit bus was a "motor vehicle" was not at issue.

GEICO also cites *Metropolitan Property & Casualty Insurance Company v. Metropolitan Transit Commission*, a supreme court case in which a Metro Transit bus struck a pedestrian whose insurer tried to recover no-fault benefits from Metro Transit. 538 N.W.2d 692, 694 (Minn. 1995). The supreme court held that the no-fault act gave the victim's insurer a right to seek indemnification from Metro Transit. *Id.* at 696. That case is also distinguishable because the supreme court's decision was not based on a determination of whether a bus is a "motor vehicle." Instead, it was based on the interpretation of section 65B.53, which replaces common-law subrogation and indemnity rights with a limited statutory right to indemnification. *Id.* at 695.

The parties cite many other cases, some of which state legal rules that are not disputed here, and others that support minor points of their analyses. We see no need to address them. To summarize our view of relevant caselaw, we conclude that *MSI* does not support the Met Council's argument and that the other cases that the parties rely on are inconclusive.

## III.    Other authorities

The Met Council points to the fact that the Department of Public Safety (DPS) has not required the Met Council to register its transit vehicles since 1986 and argues that

22

"[b]y incorporating the requirement that a vehicle must be subject to registration under chapter 168 into the [n]o-[f]ault [a]ct, the legislature intended for courts to defer to DPS's determination of what vehicles are required to register." The Met Council cites decisions of this court to the effect that courts should defer to an agency's interpretations of statutes that the agency administers.[7] *See In re Request for Issuance of SDS Gen. Permit MNG300000*, 769 N.W.2d 312, 317 (Minn. App. 2009) (stating that deference should be given to an agency's expertise and its special knowledge in its field); *HealthPartners, Inc. v. Bernstein*, 655 N.W.2d 357, 360 (Minn. App. 2003) (holding that courts should extend judicial deference to agency decision-makers when interpreting statutes that the agency is charged with administering). The Met Council goes so far as to assert that we lack authority to determine which vehicles are subject to the requirements of chapter 168. We disagree.

Deference to an agency's interpretation is most warranted when appellate courts review ambiguous language in a regulation promulgated by the agency itself. *See St. Otto's Home v. Minn. Dep't of Human Servs.*, 437 N.W.2d 35, 40 (Minn. 1989) (stating that "[w]hen the agency's construction of its own regulation is at issue . . . , considerable deference is given to the agency interpretation, especially when the relevant language is unclear or susceptible to different interpretations") (citations omitted)). Such deference is rooted in the pertinence of the agency's special expertise to the interpretation of ambiguous regulatory language. *In re Annandale NPDES/SDS Permit Issuance*, 731

---

[7] That DPS administers chapter 168 is not disputed. *See* Minn. Stat. § 168.33, subd. 1 (2012) (empowering the commissioner of public safety to exercise the powers granted in chapter 168).

N.W.2d 502, 515 (Minn. 2007). But "[n]o deference is given to the agency interpretation if the language of the regulation is clear and capable of understanding; therefore, the court may substitute its own judgment." *St. Otto's Home*, 437 N.W.2d at 40.

Here, even less deference is warranted because the provision to be interpreted is a statute passed by the legislature, not a regulation promulgated by DPS. This case therefore presents a legal question of statutory construction, subject to de novo review. *Id.* at 39–40; *Lee v. Fresenius Med. Care, Inc.*, 741 N.W.2d 117, 122 (Minn. 2007) (stating that appellate courts review questions of statutory construction de novo). "In considering such questions of law, reviewing courts are not bound by the decision of the agency and need not defer to agency expertise." *St. Otto's Home*, 437 N.W.2d at 39–40. We decline to defer to DPS as the Met Council suggests because the outcome here depends on the meaning of the words that the legislature chose to include in the relevant statutes, those words are clear and capable of understanding, and DPS has no special institutional expertise in the interpretation of English words. As the district court in the State Farm case noted, "it does not matter if the buses are actually registered or if a state agency lets the [Met] Council off the hook."

State Farm suggests that we should be persuaded by a 1975 Attorney General opinion in which the Attorney General decided that the Metropolitan Transit Commission must participate in the assigned-claims plan created by the no-fault act. Op. Att'y Gen. 632a-10 (Oct. 20, 1975). We may consider Attorney General opinions. *Billigmeier v. Cnty. Of Hennepin*, 428 N.W.2d 79, 82 (Minn. 1988). But they are not binding on this court. *Star Tribune Co. v. Univ. of Minn. Bd. Of Regents*, 683 N.W.2d 274, 289 (Minn.

24

2004).  Additionally, the cited opinion does not affect our decision because it is not on point.  The decision was based on provisions of the no-fault act not relevant to the issue in this case, and the attorney general did not address whether transit buses are "motor vehicles" under the no-fault act or whether they must be registered under chapter 168.

## D E C I S I O N

We conclude that buses operated by the Met Council are "motor vehicles" for purposes of the Minnesota No-Fault Automobile Insurance Act, and that the Met Council is therefore required to provide basic-economic-loss benefits for bus passengers without their own auto insurance who are injured in bus accidents.

**Affirmed.**